UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Esther Salas, U.S.D.J. |
| v. | : | Crim. No. 22-141 |
| DA YING SZE, | : | |
| Defendant. | : | |

PETITIONERS' OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS

EYET LAW LLC
By: Matthew T. Eyet, Esq.
382 George Street
New Brunswick, NJ 08901
(732) 379-8617
MEyet@Eyetlaw.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1
PROCEDURAL HISTORY.......................................................................................................... 2
    A.    The Arrest and Criminal Conviction................................................................................. 2
    B.    The Criminal Forfeiture Ancillary Proceeding ................................................................ 2
ARGUMENT ................................................................................................................................. 5
    A.    Standard Of Law ............................................................................................................... 5
    B.    There Remains At Least A Triable Question of Fact Whether Petitioners Have Standing Because The Funds In Question Can Be Traced From Petitioners To Defendant And Because Defendant Held Those Funds In Trust For Petitioners ......................................... 6
    C.    The Petitions Are Not Time-Barred Because They Were Made Within The Time Set By The Court And The Government Is Not Prejudiced ........................................................ 10
CONCLUSION............................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

Beatty v Guggenheim Expl. Co.,
225 NY 380 (1919) ………………………………………………………………………….9

Bankers Sec. Life Ins. Soc'y v Shakerdge,
49 N.Y.2d 939 (1980) …………………………………………………………………..… 9

Fed. Ins. Co. v United States,
882 F.3d 348 (2d Cir. 2018) ………………………………………………………..6, 9, 10

Freeman v Mar. Midland Bank-New York,
494 F.2d 1334 (2d Cir. 1974) …………………………………………………………..3

In re Koreag, Controle et Revision S.A.,
961 F.2d 341 (2d Cir. 1992), affd in part sub nom. Refco F/X Assoc., Inc. v Mebco Bank, S.A.,
1992 WL 200748 (S.D.N.Y. 1992) ……………………………………………………9

Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v Razzouk,
2018 WL 4210137 (E.D.N.Y. 2018) …………………………………………………….10

Pacheco v Serendensky,
393 F.3d 348 (2d Cir. 2004) ……………………………………………………………5, 8

Pasternack v Shrader,
863 F.3d 162, 175 (2d Cir. 2017) ………………………………………………………….5

Tancredi v Metro. Life Ins. Co.,
378 F.3d 220 (2d Cir. 2004) ………………………………………………………………11

United States v $2,350,000.00 In Lieu of One Parcel of Property Located at 895 Lake Ave.
Greenwich, Connecticut,
718 F. Supp.2d 215 (D. Conn 2010) ……………………………………………………...7, 8

United States v $822,694.81 in United States Currency, Seized From Account No. XXXXXXXXXXXX, Held in Names of Godwin Ezeemo and Winifred C.N. Ezeemo, at Bank of Am.,
2015 WL 13765353 (D Conn 2015) ……………………………………………………... 8

United States v Egan,
811 F. Supp.2d 829 (S.D.N.Y. 2011) …………………………………………………… 5

United States v Lacoff,

446 Fed Appx 311 (2d Cir. 2011) …………………………………………………………...8

United States v Ovid,
2012 WL 2087084 (E.D.N.Y 2012) ………………………………………………………2, 8

United States v Ribadeneira,
105 F.3d 833 (2d Cir. 1997) ………………………………………………………………7, 9

United States v Schwimmer,
968 F.2d 1570 (2d Cir. 1992) ……………………………………………………………..6

United States v Sharma,
2022 WL 1910026 (S.D.N.Y. 2022) ……………………………………………….....……5

United States v Vilar,
2021 WL 4504699 (S.D.N.Y. 2021) ……………………………………………………6, 8, 10

Willis Mgt. (Vermont), Ltd. v United States,
652 F.3d 236 (2d Cir. 2011) ……………………………………………………………6, 7, 9

**Rules**

Federal Rules of Criminal Procedure
  Rule 32.2………………………………………………………………………………2, 3

**Statutes**

21 U.S.C. § 853 ……………………………………………………………………3, 5, 7, 8, 9

18 U.S.C. § 982 …………………………………………………………………………...2

Petitioners Chi T Cheung, Shi Chun Lin, Qi Fang Chen, Yongning Wang, Hui Jiang, Wei Guang Wang, Zhi Hong Chen, Xiu Yu Jiang, Na Na Wang, Jing Ping Lin, and Mao Qing Chen[1] (jointly, the "Petitioners"), by and through their attorneys Eyet Law LLC, respectfully submit this memorandum of law in opposition to the motion to dismiss (the "Motion to Dismiss") their petitions (jointly the "Petitions") made by the United States of America (the "Government").[2]

## PRELIMINARY STATEMENT

This proceeding is a straightforward example of misguided individuals, unsophisticated with how financial transactions are supposed to be conducted in America, who trusted the advice of those they believed to be respectable businessmen in their community—only to be hung out to dry when it was discovered those businessmen did not have the proper licenses and their money transferring business was illegal. However, in this case Petitioners' hard-earned savings did not disappear but were seized by the Government, which has a system in place for returning such assets to their rightful owners.

Petitioners meet the requirements for the return of those assets because it was their money that was delivered to the defendant Da Ying Sze ("Defendant")—from whom it was seized—and because Defendant was holding that money on behalf of the Petitioners who remained entitled to it. In fact, the Government's own Motion to Dismiss shows this to be true—the subject funds were forfeited as relating to an "unlicensed money *transmitting* business." See Motion to Dismiss at p. 1 (emphasis added). Those funds were always intended to be returned to Petitioners as indicated by the checks attached to each Petition (the "Checks"), drafted by Defendant and payable to the

---

[1] As set forth in greater detail below, certain of the Petitions are based on the same underlying Checks as portions of the Petition of Yongning Wang ("Wang"). Petitioners request those portions of Wang's Petition be deemed superseded by these newer Petitions, but do not oppose dismissing any portions of Wang's Petition that have not been superseded.

[2] Capitalized terms not otherwise defined herein are used as defined in the Motion to Dismiss.

Petitioners. A party transmitting assets on behalf of another does not, as a matter of definition, own those assets himself, regardless of the status of his licensing or any other criminal activity.

Those funds can then be traced from the Petitioners to Defendant's bank accounts from where they were seized, and each Petitioner only seeks the return of the funds Defendant was meant to transmit for each Petitioner, represented by the Checks to each Petitioner.

## PROCEDURAL HISTORY

### A. The Arrest and Criminal Conviction

On May 10, 2021, Defendant was arrested and charged with various financial crimes. See 22-cr-141, United States v Da Ying Sze, Document Number ("Doc. No.") 1.[3]

Defendant pleaded guilty on or about February 22, 2022, to conspiracy to engage in monetary transactions in property derived from specified unlawful activity, contrary to 18 U.S.C. § 1957(a), in violation of 18 U.S.C. § 1956(h) (Count One); operation and aiding and abetting the operation of an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 1960(a), (b)(1)(A), (b)(1)(B), and (b)(1)(C) (Count Two); and bribery of bank employees, in violation of 18 U.S.C. § 215(a)(1) (Count Three). See Doc. Nos. 77 & 80.

### B. The Criminal Forfeiture Ancillary Proceeding

Also on or about February 22, 2022, pursuant to the terms of Defendant's plea, Rule 32.2(b)(1) and (b)(2) of the Federal Rules of Criminal Procedure, and 18 U.S.C. § 982(a)(1), the Court entered a Consent and Preliminary Order of Forfeiture as to Specific Property (Final as to the Defendant) (the "Preliminary Order of Forfeiture"), providing for the forfeiture of the various assets held by Defendant as cash held in financial accounts, as hard currency, and as cash

---

[3] Subsequent citations to docket entries are to entries in this proceeding unless otherwise indicated.

equivalents such as negotiable instruments.[4] Some of the forfeited funds were represented by various checks (the "Checks") written by Defendant to various third parties (including each Petitioner).

Pursuant to 21 U.S.C. § 853(n) and Rule 32.2(b) of the Federal Rules of Criminal Procedure, on May 16, 2022, a Notice of Forfeiture was filed with the Court, which attached the Preliminary Order of Forfeiture and explained the procedures for asserting a legal right, title, or interest in the Specific Property pursuant to 21 U.S.C. § 853(n) and Rule 32.2(b) of the Federal Rules of Criminal Procedure. See Doc. No. 84.

On or about August 9, 2022, copies of the Preliminary Order of Forfeiture and the Notice of Forfeiture were sent to Qiufang Chen, Shichun Lin, Wei Guang Wang, Xuedong Chen, Chi Tung Cheung, Wenjie Ye, Yongning Wang, Heng Liu, Gui Qin Lin, Hui Jiang, Mao Qing Chen, Yandi Li, Na Wang, Zhihong Chen, Jing Ping Lin, and Xiuyu Jiang by Federal Express. See Motion to Dismiss at p. 7. The cover letters to the notice listed the deadline to file a petition as September 13, 2022. Id.

The published notice explained that any person asserting a legal interest in the Specific Property was required to file a petition with the Court within 60 days from the first day of publication of the notice on the government internet site, and that if no such petitions were filed, following the expiration of the period for the filing of such petitions, the United States would have clear title to the forfeited property.

On September 12, 2022, counsel for Petitioners filed a letter with the Court requesting an extension of two weeks until September 26, 2022 to file petitions with the Court, noting that that numerous possible claimants had reached out to counsel shortly before the deadline to file petitions

---

[4] Together with a car as the single non-cash asset.

Page 3 of 12

in this proceeding. See Doc. No. 85. Specifically, counsel requested additional time to perform due diligence as to "(1) which individuals should properly assert ownership of the funds in question, and (2) the extent of the funds over which they can substantiate their claims," and that for some possible claimants it was possible the correct claimant would be someone other than the named payees on the Checks indicating the subject assets. Id. Counsel noted that this was complicated due to "significant language barriers" with the potential claimants (and now, Petitioners).

Three of the Petitions were filed on September 13, 2022, the apparent last day to do so as the Court Order granting the extension request had not yet been entered.[5] See Doc. Nos. 86-88. While the first two Petitions were made by the named payees on the underlying Checks, Wang's Petition was made by an alternative party submitting an alternative theory of interest in the funds represented by the underlying Checks.[6]

The Court held a telephone status conference in this matter on October 4, 2022, wherein the Court instructed Petitioners' counsel to file substituted petitions on or before October 18, 2022. Doc. No. 90. On October 18, 2022, seven additional Petitions (the "Substitute Petitions") were filed with the Court on behalf of the following named payees on the Checks originally filed by Wang: (1) Hui Jiang; (2) Wei Guang Wang; (3) Zhi Hong Chen; (4) Xiu Yu Jiang; (5) Na Na Wang; (6) Jing Ping Lin; and (7) Mao Qing Chen. See Doc. Nos. 91-97.

At this stage, no discovery or evidentiary hearing has been conducted.

---

[5] The request was granted in an Order dated September 13, 2022 and entered on September 14, 2022. See Doc. 89.

[6] This substitution to the Checks' named payees was made without any admission as to the sufficiency of Wang's subrogation theory of interest in the funds represented by the underlying Checks.

The Government filed the instant Motion to Dismiss on November 15, 2022, and Petitioners now file their opposition.

**ARGUMENT**

**A. Standard Of Law**

As the Government correctly notes, New York substantive law applies to resolution of Petitioners' legal right to the funds in question. See Motion to Dismiss at p. 19; United States v Egan, 811 F. Supp.2d 829, 838 (S.D.N.Y. 2011).

"[A] motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)," and therefor in reviewing such a motion the petitioners' claims must be assumed to be true. Pacheco v Serendensky, 393 F.3d 348, 352 (2d Cir. 2004). Similarly, because motions to dismiss petitions are held to the same standard as motions to dismiss a complaint, the ability to cure deficient pleadings should likewise be held to the same standard. See United States v Sharma, 2022 WL 1910026, at *3 (S.D.N.Y. 2022) ("Leave to amend should be freely given 'when justice so requires.'"). See also Pasternack v Shrader, 863 F.3d 162, 175 (2d Cir. 2017) (noting that when pleadings are deficient simply due to lack of specificity, the proper response is "almost always" to allow the pleading party to cure).

Federal statute entitles third parties to the return of property seized under criminal forfeiture if "the petitioner has a legal right, title, or interest in the property" superior to the defendant's, or if "the petitioner is a bona fide purchaser for value" of the seized property. See 21 U.S.C. § 853(n)(6)(A) and (B), respectively.

One method of showing such an interest under Section 853(n)(6)(A) (although not the only method) is the equitable remedy of imposing a constructive trust—effectively judicial recognition

that the defendant should be treated as having held the seized property on the claimant's behalf. Willis Mgt. (Vermont), Ltd. v United States, 652 F.3d 236, 242 (2d Cir. 2011); United States v Schwimmer, 968 F.2d 1570, 1581–83 (2d Cir. 1992). "[T]he assets of a constructive trust belong to the trust's beneficiaries, rather than a criminal defendant holding the trust's assets" and "a petitioner who is the beneficiary of a constructive trust enjoys a 'legal interest' in the trust's property for purposes of an ancillary proceeding." United States v Vilar, 2021 WL 4504699, at *4 (S.D.N.Y. 2021) (citing Willis Mgt. (Vermont), Ltd. v United States, 652 F.3d 236, 242 (2d Cir. 2011); United States v Schwimmer, 968 F.2d 1570, 1581–83 (2d Cir. 1992)). See also Fed. Ins. Co. v United States, 882 F.3d 348, 371 (2d Cir. 2018) ("Consequently, "if applicable state law imposes a constructive trust in property in favor of a third party, the third party's interest is superior to the government's.").

This is often the theory used when victims seek to recover funds stolen by them and then seized from a criminal by the Government. See, e.g., United States v Vilar, 2021 WL 4504699, at *4 (S.D.N.Y. 2021); Fed. Ins. Co. v United States, 882 F.3d 348, 371 (2d Cir. 2018) (recognizing victims' right to a constructive trust on even fungible assets held by a criminal if sufficiently traceable).

**B. Petitioners Stated A Cognizable Claim To The Funds In Question Can Be Traced From Petitioners To Defendant And Because Defendant Held Those Funds In Trust For Petitioners**

In the instant case, Petitioners' interest in the subject funds was greater to Defendant's because he was simply transmitting those funds on behalf of the Petitioners. No title was transferred, and the funds were only intended to be Defendant's bank account temporarily during that process. In fact, Defendant had already given the funds back to Petitioners by drafting and delivering the Checks. Furthermore, Defendant was simply holding those funds in constructive

trust for Petitioners. Unlike the analogy made by the Government, the Petitioners did transfer title to the subject money to Defendant based on fraud (such as by payment for non-existent merchandise), but rather entrusted Defendant to transmit into their accounts on their behalf.

The main case relied upon by the Government to argue otherwise—Ribadeneira[7]— has been overruled by subsequent authority and is otherwise inapplicable. See Willis Mgt. (Vermont), Ltd. v United States, 652 F.3d 236, 238 (2d Cir. 2011) (explicitly rejecting Ribadeneira's holding on the issue of constructive trusts in forfeiture ancillary proceedings). See also, e.g., United States v $2,350,000.00 In Lieu of One Parcel of Property Located at 895 Lake Ave. Greenwich, Connecticut, 718 F. Supp.2d 215, 231 (D. Conn 2010) (noting the specific holdings of Ribadeneira are distinguishable and inapplicable to claims where claimants "are not general creditors to a bank account, but instead are claimants to specific property via adequate tracing of funds").

As an initial matter, Petitioners do **not** make their claim as bona fide purchasers for value under Section 853(n)(6)(A) but rather as owners who temporarily entrusted funds to Defendant they expected to be duly returned—and who now seek to recover those funds under Section 853(n)(6)(A) as the true owners with superior interest. Petitioners do not claim to have purchased checks from Defendant such as the claimants in Ribadeneira who were attempting to purchase funds in American currency. Therefore, Ribadeneira's holding that claimants who purchase checks have no claim on any specific "pot" of fungible assets is simply inapplicable.

In fact, simply looking at the logical consequences of this claim shows that it cannot stand outside the specific factual circumstances before the court in Ribadeneira. The Government makes the broad claim that simply seeking the return of fungible liquid assets—rather than tangible property such as "specific antique coins or earmarked out-of-print bills"—is enough to deny a

---

[7] United States v Ribadeneira, 105 F.3d 833 (2d Cir. 1997)

Section 853(n) claim. See Motion to Dismiss at pp. 27-28 (citing Ribadeneira, 105 F.3d at 836). If this were true, bank accounts could never be subject to Section 853(n) claims whatsoever—a claim that not only goes against the clear practice of criminal forfeiture proceedings in general but that would make the publication of forfeiture in this case[8] a meaningless and counter-productive gesture and any resulting procedure no more than a farce. See, e.g., United States v Vilar, 2021 WL 4504699, at *4 (S.D.N.Y. 2021) (denying dismissal of investment fraud victims' claim for return of funds seized from criminal defendant). In this context there is no presumption against applying a constructive trust (unlike in bankruptcy proceedings); United States v Lacoff, 446 Fed Appx 311, 313 (2d Cir. 2011); (upholding petition for return of seized bank account funds upon showing they were held in constructive trust); United States v Ovid, 2012 WL 2087084, at *9 (E.D.N.Y 2012); United States v $822,694.81 in United States Currency, Seized From Account No. XXXXXXXXXXXX, Held in Names of Godwin Ezeemo and Winifred C.N. Ezeemo, at Bank of Am., 2015 WL 13765353, at *1 (D Conn 2015).

Conversely, $2,350,000.00 In Lieu of One Parcel of Property makes clear that in New York it is certainly possible for claimants to show a specific property interest in fungible assets held in a bank account when the flow of funds can be traced from the claimant to the defendant, either directly or by establishing a constructive Trust—**both** of which apply to Petitioners. See 718 F. Supp.2d at 215.

Clearly, at this early stage, Petitioners have neither proved their interest in the funds represented by the Checks **nor** failed to make such a showing. Rather, that no evidentiary showing has yet occurred on this material issue simply shows dismissal is at best premature. See Pacheco v Serendensky, 393 F3d 348, 352 (2d Cir. 2004).

---

[8] A publication specifically served on Petitioners and including a deadline for the Petitions.

Similarly, Petitioners' claim of a constructive trust over those funds remains an open question at this pre-evidentiary stage.[9]

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee." Beatty v Guggenheim Expl. Co., 225 NY 380, 386 (1919) (superseded by statute on other grounds). Notably, while the courts have attempted to provide specific tests for when this equitable remedy is appropriate, "the absence of any one factor will not itself defeat the imposition of a constructive trust when otherwise required by equity." In re Koreag, Controle et Revision S.A., 961 F.2d 341, 352 (2d Cir. 1992), affd in part sub nom. Refco F/X Assoc., Inc. v Mebco Bank, S.A., 1992 WL 200748 (S.D.N.Y. 1992) (citing Bankers Sec. Life Ins. Soc'y v Shakerdge 49 N.Y.2d 939, 940 (1980)).

Here, Defendant held funds that, by his own admission, Petitioners were entitled to and for which he wrote and delivered valid instruments for. Petitioners readily admit they will need to make a showing of such a trust before defeating the Preliminary Forfeiture Order, and simply seek the opportunity to make that showing rather than granting preliminary and pre-evidentiary dismissal.

Notably, the only factor overtly discussed in Ribedeneira was that the constructive trusts are inappropriate when a statutory remedy exists—based on the *incorrect* premise that Section 853(i) provides such a remedy and forecloses on this equitable remedy. See United States v Ribadeneira, 105 F.3d 833, n.5 (2d Cir. 1997); see also Willis Mgt. (Vermont), Ltd. v United

---

[9] It is not necessary for claimants to affirmatively plead a constructive trust in their petition. See Fed. Ins. Co. v United States, 882 F.3d 348, 369 (2d Cir. 2018).

States, 652 F.3d 236, 238, 243 (2d Cir. 2011) ("conclud[ing] that § 853(i) does not preclude, as a matter of law, recognizing a constructive trust and [that] a constructive trust is not inconsistent with the forfeiture statutory scheme" and explicitly rejecting Ribadeneira on this point).

Rather, the facts in this case are more akin to those in Vilar, where victims made a cognizable claim for the return of funds seized from the bank account of a defendant convicted of various financial crimes such as "securities fraud; securities, investment advisor, mail, and wire fraud; and money laundering" upon a sufficient factual showing of the claimants' investments and tracing the claimants' investments to the funds in question. See United States v Vilar, 2021 WL 4504699, at *1 (S.D.N.Y. 2021). See also Fed. Ins. Co. v United States, 882 F.3d 348, 371 (2d Cir. 2018) (recognizing victims' right to a constructive trust on even fungible assets held by a criminal if sufficiently traceable).

### C. The Petitions Are Not Time-Barred Because They Were Made Within The Time Set By The Court And The Government Is Not Prejudiced

There is no legitimate dispute that the Petitions were timely filed because (1) the Government does not argue that the first three Petitions were untimely, and (2) the Substitute Petitions were filed within the time explicitly set by this Court to do so.

This Court issued a briefing schedule during the October 4, 2022 teleconference (subsequently memorialized by docket entry and submitted Order) stating, inter alia, "Counsel for the petitioners will have 2 weeks to substitute any of the petitions. Govt. will have 30 days to file any consolidated motion to dismiss petitions." Doc. No. 90. Two weeks from that date was October 18, 2022—the date the Government agrees the Substitute Petitions were filed.

Regardless, the Court has wide discretion to accept even late petitions upon a review of "[1] the danger of prejudice to the opposing party, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was in the

reasonable control of the movant, and [4] whether the movant acted in good faith." See Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v Razzouk, 2018 WL 4210137, at *2 (E.D.N.Y. 2018) (quoting Tancredi v Metro. Life Ins. Co., 378 F.3d 220, 228 (2d Cir. 2004)) (internal quotation and revision marks and omitted). Here, the Substitute Petitions are for the same assets—and based on specific Checks—underlying the Wang Petition, and that the Government was timely put on notice as being in issue on September 13, 2022. In fact, The Government effectively admits this, and explicitly admits Wang's petition was timely. Motion to Dismiss at p. 33 ("On October 18, 2022—35 days after the deadline of September 13, 2022—the October 2022 Petitioners filed petitions making claims to the funds underlying various checks Petitioner Wang had previously claimed in his timely petition.").

The Government faces no prejudice by this substitution of claimants (indeed it does not even claim to), any delay would have been miniscule, there is no showing of any bad faith on behalf of the Substitute Petitioners, and the reasons for the delay were, as indicated in the written request for an extension, in order to adequately determine the proper parties in interest and make the appropriate Petitions.

## CONCLUSION

For the reasons given, the Court should deny the Motion to Dismiss in its entirety and allow Petitioners an opportunity to make their proofs. In the alternative, Petitioners seek leave to amend their Petitions to cure any defect.

DATED:  November 29, 2022              Respectfully Submitted,

                                        *s/ Matthew Eyet            .*
                                        Matthew Eyet
                                        EYET LAW LLC

382 George Street
New Brunswick, NJ 08901
Phone: (732) 379-8617
Fax: (908) 292-1108
MEyet@Eyetlaw.com
**Attorneys for Petitioners Chi T Cheung, Shi Chun Lin, Qi Fang Chen, Hui Jiang, Wei Guang Wang, Zhi Hong Chen, Xiu Yu Jiang, Na Na Wang, Jing Ping Lin, and Mao Qing Chen**