UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA     :     Hon. Esther Salas, U.S.D.J.

         v.     :     Crim. No. 22-141

DA YING SZE,     :

        Defendant.     :

---

REPLY BRIEF OF THE UNITED STATES OF AMERICA IN OPPOSITION TO
PETITIONERS' RESPONSE TO THE UNITED STATES' MOTION TO DISMISS

---

PHILIP R. SELLINGER
By: Sarah Devlin
Assistant U.S. Attorney
United States Attorney
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

## TABLE OF CONTENTS

PRELIMINARY STATMENT…………………………………………………................. 1

BACKGROUND…………………………………………………….....………………………..2

DISCUSSION

I.   PETITIONERS' ALLEGATIONS ARE INSUFFICIENT TO
     ESTABLISH STANDING TO FILE A CLAIM……………….….......……………..2
     A. Courts Have Authority to Dismiss Petitions for Lack of
        Standing…………………………………………………………………………2
     B. Petitioners Failed to Allege an Interest in Any Specific Asset
        Subject to Forfeiture………………………………………………….....3
     C. Petitioners Are at Best General Creditors Who Lack Standing………………5

II.  THERE IS NO BASIS TO IMPOSE A CONSTRUCTIVE
     TRUST……………………………………………………………………………8
     A. The Petitioners May Not Raise New Theories Absent
        from Their Petitions……………………………………………….......……………9
     B. Petitioners Do Not Meet the Requirements for the
        Imposition of a Constructive Trust……………………………….....…………12

III. THE OCTOBER 2022 PETTIONS SHOULD BE DISMISSED AS
     UNTIMELY……………………………………………………………………17

CONCLUSION…......…………………………………………………………………18

## TABLE OF AUTHORITIES

### Cases

*Ades & Berg Grp. Inv'rs v. Breeden (In re Ades & Berg Grp. Inv'rs)*,
550 F.3d 240 (2d Cir. 2008)……………......……………………......……………..........12

*Bertoni v. Catucc*i,
117 A.D.2d 892, 498 N.Y.S.2d 902 (N.Y.  App. Div. 1986)………………......………15

*Fed. Ins. Co. v. United States*, 882 F.3d 348 (2d Cir. 2018)…………………...…………10

*In re Black & Geddes, Inc. (Dampskibsselskabet AF 1912 Aktieselskab v. Black &
Geddes, Inc.)*, 35 B.R. 830 (Bankr. S.D.N.Y. 1984)…………………………….…………13

*In re First Cent. Fin. Corp.*, 377 F.3d 209 (2d Cir. 2004)……………….......………………13

*In re Koreag, Controle et Revision S.A.*, 961 F.2d 341 (2d Cir. 1992)………………..13

*Nat'l Inst. of Sci. & Tech. v. Mohapatra*, No. CV2012361MASZNQ,
2021 WL 2190980 (D.N.J. May 31, 2021)…………….......………………….......…………9

*In the Matter of Berg*, 387 B.R. 524 (Bkrtcy N.D. Ill. 2008)……………….......…………15

*New York State Assn. of Life Ins. Underwriters v. Supt. of Insurance*,
37 A.D.2d 304, 325 N.Y.S.2d 172 (N.Y. 1971)……………….......…………………….......14

*Olson v. Ako*, 724 Fed App'x 160 (3d Cir. Mar. 20, 2018)……………….......………………9

*Pacheco v Serendensky*, 393 F3d 348 (2d Cir. 2004)……………….......……………….....2

*Penn. ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173 (3d Cir. 1988)…………….......9

*Rodgers v. Roulette Records, Inc.*, 677 F. Supp. 731 (S.D.N.Y. 1988)……………….......13

*Ross v. Hayt, Hayt & Landau, LLC*, No. 15-1506,
2015 WL 8781307, 2015 U.S. Dist. LEXIS 166787 (D.N.J. Dec. 14, 2015)…………….....10

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)…...2

*United States v. $822,694.81*, No. 3:13-CV-00545,
2015 WL 13765353 (D. Conn. July 24, 2015)………………….......………………….......16

*United States v. Benitez*, 779 F.2d 135 (2d Cir. 1985)…...……………….......…....……14

*United States v. BCCI Holdings (Luxembourg) S.A. (Petition of Republic of Panama)*,
833 F. Supp. 29 (D.D.C. 1993)……………….......……………….......…………………….....12

*United States v. BCCI Holdings (Luxembourg) S.A. (Petition of Chawla)*,
46 F.3d 1185 (D.C. Cir. 1995)……………….......……………….......…………………….......6

*United States v. BCCI Holdings (Luxembourg), S.A.*,
961 F. Supp. 282 (D.D.C. 1997)………………….......………………….......……………..2

*United States v. BCCI Holdings (Luxembourg) S.A. (Final Order of Forfeiture and Disbursement)*, 69 F. Supp. 2d 36 (D.D.C. 1999) ……………….......………………….......12

*United States v. Cambio Exacto*, S.A., 166 F.3d 522 (2d Cir. 1999)…………….......2, 7

*United States v. Catala*, 870 F.3d 6 (1st Cir. 2017)…………….…....…………….…......6

*United States v. Ceballos-Lepe*, 977 F. Supp. 2d 1085 (D. Utah 2013)……………....3

*United States v. Chicago, 2017 WL 1024276 (S.D. Ala. Mar. 16, 2017)*…………………*18*

*United States v. Corpus*, 491 F.3d 205 (5th Cir. 2007)…………….…....………….…...6

*United States v. Dupree*, 919 F. Supp.2d 254 (E.D.N.Y. 2013)……………....………6

*United States v. Eldick*, 223 Fed. Appx. 837 (11th Cir. 2007)……………….…....…….11

*United States v. Khan*, 129 F.3d 114, 1997 WL 701366 (2d Cir. Nov. 10, 1997)…....…….7

*United States v. Lacoff*, 446 F. App'x 311 (2d Cir. 2011)……………….…....………….16

*United States v. Madoff*, 2012 WL 1142292 (S.D.N.Y. Apr. 3, 2012)……………....3, 5

*United States v. Mazza-Alaluf*, No. S1 07 Cr. 403 (PKC),
2011 WL 308266 (S.D.N.Y. Jan. 27, 2011)………………….…....………………....…….4

*United States v. Mendez*, 2021 WL 5898185 (S.D. Fla. Dec. 3, 2021)……………....……6

*United States v. Monzon*, 2009 WL 361095 (S.D. Fla. Feb. 9, 2009)……………….....…12

*United States v. Negron-Torres*, 876 F. Supp. 2d 1301 (M.D. Fla. 2012)…………..3, 6

*United States v. Neidig*, 253 Fed. Appx. 239 (3d Cir. 2007)………………….…....…….10

*United States v. Ovid,* No. 09-CR-216,
2012 WL 2087084 (E.D.N.Y. June 8, 2012)………………….…....……………….....…16

*United States v. Petters*, 857 F. Supp. 2d 841 (D. Minn. 2012) ………………….....…….3

*United States v. Pokerstars*, 2012 WL 1659177 (S.D.N.Y. May 9, 2012)……………....17

*United States v. Ramunno*, 2009 WL 363910 (N.D. Ga. Jan. 13, 2009)……………....…11

*United States v. Ribadeneira*, 920 F. Supp. 553 (S.D.N.Y. 1996)………..………....3, 4

*United States v. Ribadeneira*, 105 F.3d 833 (2d Cir. 1997)…………..….....…………3, 4

*United States v. Salam Inc.*, 191 F.Supp.2d 725 (E.D. La. November 20, 2001)…….....…11

*United States v. Schwimmer*, 968 F.2d 1570 (2d Cir. 1992)......................................14

*United States v. Sigillito*, 938 F. Supp.2d 877 (E.D. Mo. 2013)............................3

*United States v. Strube*, 58 F. Supp. 2d 576 (M.D. Pa. 1999)............................9

*United States v. Tarraf*, 725 F. Supp. 2d 625 (E.D. Mich. 2010)............................8

*United States v. Vilar*, No. 05-CR-621 (RJS),
2021 WL 4504699 (S.D.N.Y. Sept. 30, 2021)............................4, 15, 16

*United States v. Watkins*, 320 F.3d 1279 (11th Cir. 2003)............................5

*United States v. White*, 675 F.3d 1073 (8th Cir. 2012)............................6

*Wilcox v. Wilcox*, 649 N.Y.S.2d 222 (3d Dep't 1996) ............................12

*Willis Management (Vermont), Ltd. v. United States*,
652 F.3d 236 (2d Cir. 2011)............................4, 15

## **Statute**

21 U.S.C. § 853(n)(3)..........................................passim

## **Secondary Sources**

1 Palmer, Restitution, § 2.14............................14

Stefan Cassella, Asset Forfeiture Law in the United States (2d ed. 2013) ...........12

## PRELIMINARY STATEMENT

The Government respectfully submits this reply to Petitioners Chi T Cheung, Shi Chun Lin, Qi Fang Chen, Yongning Wang, Hui Jiang, Wei Guang Wang, Zhi Hong Chen, Xiu Yu Jiang, Na Na Wang, Jing Ping Lin, and Mao Qing Chen ("Petitioners") response to the Government's Motion to Dismiss.   Under well-settled law, the general, unsecured debt that Petitioners contend is owed to them by Sze does not rise to a legally cognizable interest in specific property subject to forfeiture and does not confer standing on Petitioners to pursue their petitions in this matter. While Petitioners may seek to take action against Sze, or, to the extent applicable, seek relief through the Attorney General's discretionary authority to provide forfeited funds to crime victims through the petition and remission process, they lack standing to assert a claim in this action.   Accordingly, their petitions should be dismissed.

In their opposition to the motion to dismiss, Petitioners assert a new theory, not referenced in any of their petitions: constructive trust.  The Petitioners have put absolutely no facts before the Court supporting this theory.  Even taking the unsupported legal conclusions in their opposition brief at face value, this argument fails as a matter of law.  Petitioners' assertions still show nothing more than a debt allegedly owed to them by Sze, rather than any legal interest in the specific property named in the preliminary order of forfeiture.

## BACKGROUND

On September 13, 2022 (Doc. Nos. 86-88), and on October 18, 2022 (Doc. Nos. 91-97), Petitioners filed ancillary petitions (the "Petitions"), asserting that they

have an interest in "the disposition of the funds represented by" certain checks.

The Petitions do not identify any specific accounts or specific funds in which

Petitioners allegedly have an ownership interest.   On or about November 15, 2022,

the Government moved to dismiss Petitioners' claims on the ground that they lack

standing to assert a claim.   Doc. No. 104.   On or about November 29, 2022,

Petitioners filed an opposition to the Government's motion to dismiss. Doc. No. 106.

## DISCUSSION

### I.   PETITIONERS' ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH STANDING TO FILE A CLAIM

#### A.   Courts Have Authority to Dismiss Petitions for Lack of Standing

The burden of proof to establish sufficient standing rests with the claimant.

*United States v. Cambio Exacto*, S.A., 166 F.3d 522, 526 (2d Cir. 1999).

To the extent that the Petitioners argue that "dismissal is at best premature"

at this stage of the case (Doc. No. 106 at 12), they are mistaken.[1]   Courts routinely

---

[1] To the extent Petitioners cite *Pacheco v. Serendensky* for the proposition that dismissal at this state is "premature," the portion of *Pacheco v Serendensky*, 393 F3d 348 (2d Cir. 2004) on which petitioners rely is not applicable here.  In *Pacheco*, the court noted that under Rule 32.2 of the Federal Rules of Criminal Procedure, "a motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)."  393 F3d at 352 (citing *United States v. BCCI Holdings (Luxembourg)*, S.A., 961 F. Supp. 282, 285 (D.D.C. 1997)).  As such, in reviewing the petition, the district court should have assumed that the allegations in the petition were true and dismissed the petition "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)) (internal citations omitted).  Instead, the district court required the petitioner to make a prima facie showing to defeat the government's motion to dismiss, which was only required if the government had moved for summary judgment after some discovery. *Id.*  Here, the Government is not asking petitioners to make a prima facie showing of entitlement to relief, but instead asserting that their petitions, if accepted as true, do not demonstrate standing.

2

dismiss petitions filed by ancillary petitioners that lack standing pursuant to Rule 32.2(c)(1)(A). *See e.g. United States v. Ceballos-Lepe*, 977 F. Supp. 2d 1085, 1088-89 (D. Utah 2013) (granting motion to dismiss under Rule 32.2(c)(1)(A) for failure to allege sufficient facts to establish standing under § 853(n)(2)); *United States v. Sigillito*, 938 F. Supp.2d 877, 883 (E.D. Mo. 2013) (Government may move under Rule 32.2(c)(1)(A) to dismiss for failure to comply with the pleading requirements, lack of standing, or failure to state a claim on which claimant could prevail even if all factual allegation are true); *United States v. Negron-Torres*, 876 F. Supp. 2d 1301 (M.D. Fla. 2012) (granting Rule 32.2(c)(1)(A) motion to dismiss for lack of standing); *United States v. Petters*, 857 F. Supp. 2d 841, 844 (D. Minn. 2012) (Rule 32.2(c)(1)(A) is the proper vehicle for moving to dismiss a claim if the Government believes that even if all of claimant's factual allegations were true, the claim must be rejected as a matter of law); *United States v. Madoff*, 2012 WL 1142292, *3 (S.D.N.Y. Apr. 3, 2012) (Government entitled to dismissal of claim pursuant to Rule 32.2(c)(1) if it fails to state enough facts to state a plausible claim).

**B.**     **Petitioners Failed to Allege an Interest in Any Specific Asset Subject to Forfeiture**

Petitioners have failed to allege any particular accounts or particular sums of seized U.S. currency over which they allegedly have an ownership interest.   "[A]n interest 'in' property must be an interest in a particular, specific asset, as opposed to a general interest in an entire forfeited estate or account."   *United States v. Ribadeneira*, 105 F.3d 833, 836 (2d Cir. 1997) (per curiam) (affirming *United States v. Ribadeneira*, 920 F. Supp. 553, 554-55 (S.D.N.Y. 1996) (as holders of checks

drawn on seized account, as opposed to security interests, claimants were unable to assert rights to a particular asset or specified funds and hence lacked standing)).[2]

Here, Petitioners assert nothing more than the debt allegedly owed to them by Sze. As a court held with language equally applicable to this matter:

> The petitioners do not assert a direct nexus between their loans and these seizures of hard currency.  Similarly, the petitioners do not assert that their loans to [a company] had any nexus to the [bank account] that was subject to the preliminary forfeiture order.  While the Court is sympathetic to the petitioners' predicament, there is no authority to support their contention that, as 'defrauded investors,' they have standing to contest the forfeiture.

*United States v. Mazza-Alaluf*, No. S1 07 Cr. 403 (PKC), 2011 WL 308266

(S.D.N.Y. Jan. 27, 2011).

Here, the Petitioners have made no allegations identifying the property in which they asserts an interest.  They do not point to any particular bank account of any particular person or entity, or any particular amount of U.S. currency listed in the preliminary order of forfeiture.   Instead, consistent with their position as general creditors, they allege only the debt they argue is owed to them.

---

[2] Although petitioners claim that *United States v. Ribadeneira* is no longer good law, that case has not in fact been overruled.  In *Ribadeneira*, the Second Circuit noted in a footnote that the district court correctly declined to apply a constructive trust in part "because § 853(i) provides a legal remedy which obviates the need for application of an equitable remedy."  105 F.3d 833, 837 n.5 (2d Cir. 1997).  In *Willis Managment (Vermont), Ltd. v. United States*, 652 F.3d 236 (2d Cir. 2011), the Second Circuit simply rejected the notion that this footnote held that "constructive trusts are never proper in the forfeiture context," thus overruling prior caselaw in the Second Circuit.  *Id.* at 242–44.  First, the court found that *Ribadeneira* was distinguishable since the petitioners in that case were general unsecured creditors.  *Id.* at 243.  Second, even if the footnote applied, "its conclusion. . . was not essential to the Court's holding because it was offered in the alternative and therefore it is dictum that is not binding [on the court]."  *Id.*  Further, to the extent Petitioners claim *Ribadeneira* is limited to the facts of that case, they are wrong.  The case is widely cited, and is even cited favorably in *United States v. Vilar*, a case on which the Petitioners' argument relies.

### C.   Petitioners Are at Best General Creditors Who Lack Standing

Under well-established legal principles, Petitioners' allegations are insufficient to demonstrate standing in this matter.   By Petitioners' own allegations, Sze and/or his associates, took possession of funds the Petitioners provided to Sze, and the Petitioners do not allege that they retained any security interest in money they transferred to Sze.   Any ownership interest Petitioners had in any particular funds that they transferred to Sze was lost, as a matter of law, when they gave the cash to Sze and/or his associates.

Petitioners have not claimed they have a security interest, secured a judgment, or perfected a lien against any particular asset listed among the Specific Property in the Preliminary Order of Forfeiture ("the Specific Property").   *See United States v. Watkins*, 320 F.3d 1279, 1283-84 (11th Cir. 2003) (holding that petitioner without an attached security interest cannot recover under 21 U.S.C. § 853(n)(6)(B)); *see also United States v. Madoff*, No. 09 CR 213 DC, 2012 WL 1142292, at *4 (S.D.N.Y. Apr. 3, 2012) ("To have a claim in the specific property, a creditor, therefore, must secure a judgment or perfect a lien against a particular item").   Instead, the facts they pled show that they only a generalized interest in the defendant's estate as a whole and not, as required by 21 U.S.C. § 853(n)(2), a legal interest specifically in the Specific Property.   Numerous cases the government cited in its motion to dismiss hold that a person who transfers money, absent a security interest in those specific funds, transfers possession, control, and title in the transferred funds to the transferee, and therefore lacks standing to pursue a claim in an ancillary proceeding.

Furthermore, it is well-established that general creditors such as the Petitioners, do not have a legal interest in forfeited property. *United States v. Catala*, 870 F.3d 6 (1st Cir. 2017) (unsecured creditor has no legal interest in the particular assets included in the forfeiture order and thus cannot recover under § 853(n)(6)); *United States v. White*, 675 F.3d 1073, 1080-81 (8th Cir. 2012) (agreeing with other circuits holding that general unsecured creditors lack standing because they do not have an interest in any particular asset); United States v. BCCI Holdings (Luxembourg) S.A. (Petition of Chawla), 46 F.3d 1185, 1191 (D.C. Cir. 1995) (bank depositors do not have legal interest in funds in bank's correspondent accounts); *United States v. Corpus*, 491 F.3d 205, 211 (5th Cir. 2007) (third party who was an unsecured creditor of the person who sold the property to the defendant in exchange for drug proceeds had no legal interest in the property at the time it became subject to forfeiture, and thus could not recover under § 853(n)(6)(A)); *United States v. Dupree*, 919 F. Supp.2d 254, 283-84 (E.D.N.Y. 2013) (dismissing claim for back wages for lack of standing because claimant was only a general creditor); *United States v. Negron-Torres*, 876 F. Supp. 2d 1301, 1305 (M.D. Fla. 2012) (third party who claimed she loaned portion of forfeited funds to defendant to buy auto parts and expected to be repaid was an unsecured creditor and lacked standing); *United States v. Mendez*, 2021 WL 5898185 (S.D. Fla. Dec. 3, 2021) (law firm that had a contingency-fee arrangement with defendant and that prevailed in a state lawsuit filed on defendant's behalf to recover stolen property, did not thereby acquire a specific interest in the recovered property but remained an unsecured creditor; so, it lacked standing to contest the forfeiture of the recovered property as substitute assets).

Petitioners have wholly failed to distinguish their interest from this large body of case law. This is because their interest fits squarely within the principles of those cases. Petitioners seek to avoid this well-settled line of cases by relying on the fact that they "remained entitled" to payment from Sze and that they "entrusted defendant to transmit into their accounts on their behalf." Doc. No. 106 at 11. While the government appreciates that the Petitioners expected Sze to pay them, their expectation does not give rise to an interest cognizable by the forfeiture laws. Petitioners' claim is premised on their expectation that the funds they gave Sze would be returned to them "as owners who temporarily entrusted funds to Defendant they expected to be duly returned" (Doc. No. 106 at 11), placing them squarely within the definition of unsecured creditors. While the Petitioners could make requests to Sze for the return of their funds, they surrendered any legal authority or control over those funds. In essence, the Petitioners took part in an unregulated and underground financial system not guaranteed by any agency or formal insurance policy.

As the Second Circuit explained in *United States v. Khan*, "the appellants all are essentially unsecured creditors of the owner's seized property, and as such do not have standing to challenge the seizure." 129 F.3d 114, 1997 WL 701366, at *1 (2d Cir. Nov. 10, 1997) (table, unpublished)(holding that individuals who had deposited funds with an illegal money transmitting business did not have standing to contest the forfeiture of the money transmitting business's accounts); *see also Cambio Exacto, S.A.*, 166 F.3d at 529 (person to whom a money transmitter owes

money lacks standing as a general creditor to contest forfeiture of money transmitter's account).

Petitioners put forward many of the same arguments as the would-be claimants in *United States v. Tarraf* and to equal effect. Simply because the Petitioners intended to be repaid by Sze does not undo the fact that they surrendered possession and control of their funds to Sze. In *United States v. Tarraf*, 725 F. Supp. 2d 625 (E.D. Mich. 2010), approximately $100,000 was seized from and forfeited by Tarraf when he failed to declare that he was carrying more than $10,000 out of the country. Tarraf owned a travel agency and testified that $95,000 of the seized funds was deposits given to him to secure lodging and accommodations in Saudi Arabia. *Id.* at 627. He also compiled a list of the individuals who had given him the deposits. *Id.* Many of these individuals filed petitions in the ancillary hearing claiming an interest in the forfeited funds. *Id.* The government filed a motion to dismiss the petitions based on lack of standing and failure to allege a valid legal interest. *Id.* The court found that even if the petitioners were able to trace their deposits to the cash that was seized from Tarraf, they were still unsecured, general creditors. *Id.* at 630. As general, unsecured creditors, petitioners did not have standing. *Id.*

## II.    THERE IS NO BASIS TO IMPOSE A CONSTRUCTIVE TRUST

Having failed to establish standing as the payees on checks and pursuant to common law subrogation, Petitioners now seek to avoid dismissal of their petitions by asking the Court to recognize a constructive trust over the assets subject to forfeiture. Procedurally, the Court may not entertain this theory, which was raised

8

for the first time in response to the government's motion to dismiss.  Substantively,

under well-settled New York law, however, the requisite elements for the finding of

such a trust have not been met.

### A.   The Petitioners May Not Raise New Theories Absent from Their Petitions

As an initial matter, the Petitioners' alleged constructive trust was not asserted in

their petitions.  Rather, their Petitions claim a right to recover the Specific Property

only as check payees and pursuant to common law subrogation.   As discussed in the

government's Motion to Dismiss, all of a petitioner's grounds for recovery must be

stated within their petitions, and petitioners may not amend their petitions to assert

additional grounds beyond the 30-day period mandated by 21 U.S.C. § 853.   *See United

States v. Strube*, 58 F. Supp. 2d 576, 585 (M.D. Pa. 1999) (to the extent that claimant

amended her claim to add a constructive trust theory after the 30-day period for filing a

claim had expired, it was untimely, and the court was free to ignore the additional

ground for relief); *Tarraf*, 725 F. Supp. 2d 625, 632-34 (rejecting constructive trust

theory inter alia because claimants did not raise it in their claim as required by §

853(n)(3)).

Furthermore, the Petitioners may not amend their pleading through arguments

in an opposition brief. *See Penn. ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181

(3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in

opposition to a motion to dismiss."); *Olson v. Ako*, 724 Fed App'x 160, 166 (3d Cir. Mar.

20, 2018).  Moreover, courts may not consider claims raised for the first time in a

plaintiff's opposition to a motion to dismiss.  *Nat'l Inst. of Sci. & Tech. v. Mohapatra*, No.

CV2012361MASZNQ, 2021 WL 2190980, at *3 (D.N.J. May 31, 2021); *see also Ross v. Hayt, Hayt & Landau, LLC*, No. 15-1506, 2015 WL 8781307, at *3 n.2, 2015 U.S. Dist. LEXIS 166787, at *7 n.2 (D.N.J. Dec. 14, 2015) ("Plaintiff cannot use an opposition brief to supplement his complaint.").

To the extent that Petitioners cite *Fed. Ins. Co. v. United States* for the proposition that "it is not necessary for claimants to affirmatively plead a constructive trust in their petition" (Doc. No. 106 at n.9), their reliance on that case is inapposite.  In that case, even though the petitioners did not allege a constructive trust legal theory in their petition, the court found that "facts on which Federal's constructive trust theory relies were adequately alleged in its petition."  882 F.3d 348, 352 (2d Cir. 2018).  Here, the Petitioners have failed to allege any facts that would support the elements of constructive trust in their petitions.

This principle — that a plaintiff cannot amend his complaint through a lawyer's argument in a brief — has particular force in the forfeiture context, where the Petitioners' change of course also divests them of standing. The forfeiture laws require that a petition "set forth the nature and extent of the petitioner's right, title, or interest" in the property subject to forfeiture. 21 U.S.C. § 853(n)(3).  As courts have recognized in the forfeiture context, state property law is particularly "technical," *United States v. Neidig*, 253 Fed. Appx. 239, 241 n.6 (3d Cir. 2007) (per curiam and unpublished). It is the petitioners' burden to identify the legal basis for their claims under state law. Were it otherwise, the Government would be in the untenable position of scouring the law books of 50 states to determine if the facts alleged in a petition give rise to some conceivably

protectable property interest. That is particularly so where, as here, (i) the petitioners are represented by counsel and (ii) the petitioners do identify legal theories in their petitions. Thus, because the Petitioners' constructive trust arguments were not raised in their Petitions, the Petitions fail to comply with the technical requirements of section 853(n), and should be dismissed for that reason alone.

Petitioners ask the Court to recognize a constructive trust, claiming that "this is often the theory used when victims seek to recover funds from by them and then seized from a criminal by the government." Doc. No. 106 at 10. To the contrary, the case law shows that many victims' petitions seeking forfeitable funds are dismissed for lack of standing. *United States v. Eldick*, 223 Fed. Appx. 837, 839-40 (11th Cir. 2007) (unpublished) (that fraud victim can trace his losses to the defendant's property makes no difference; to have standing, the claimant must have a present interest in the property and since he voluntarily transferred his property, he "retained no interest in the property" and was an "unsecured creditor[] without standing to contest the forfeiture … in the ancillary proceeding."); *United States v. Salam Inc.*, 191 F.Supp.2d 725, 728 (E.D. La. November 20, 2001) (a general creditor lacks standing to file a claim in the ancillary proceeding and the burden of establishing the standing to contest the forfeiture is on the claimant), aff'd 74 Fed. Appx. 421 (5th Cir. 2003); *United States v. Ramunno*, 2009 WL 363910 (N.D. Ga. Jan. 13, 2009) ("As a fraud victim who voluntarily transferred his property to the [d]efendant, [victim] has no greater interest in the forfeited property than does any other general creditor" and "[t]itle to the funds in question no longer belongs to the victim, but rather it belongs to the [d]efendant."), aff'd

11

599 F.3d 1269 (11th Cir. 2010); *United States v. BCCI Holdings (Luxembourg) S.A. (Final Order of Forfeiture and Disbursement)*, 69 F. Supp. 2d 36, 59 (D.D.C. 1999) (a person who voluntarily transfers his property to the defendant is "no longer the owner of that property" and his ability to trace his property to the defendant's assets is irrelevant; therefore, victims who transferred their property to the defendant have no greater standing to contest the forfeiture order than other unsecured creditors and "had to look to the worldwide liquidation proceeding to recover a portion of their claims along with all other unsecured creditors").[3]

### B.   Petitioners Do Not Meet the Requirements for the Imposition of a Constructive Trust

"A constructive trust is an equitable remedy available when the holder of the legal title may not in good conscience retain a beneficial interest.  The constructive trust doctrine is a 'fraud-rectifying' rather than an 'intent-enforcing' remedy."  *Wilcox v. Wilcox*, 649 N.Y.S.2d 222, 224 (3d Dep't 1996) (citation and internal quotation marks omitted).  "[E]quity and good conscience" are "the fundamental requirement[s] for imposition of a constructive trust" under New York law.  *Ades & Berg Group Inv.*, 550 F.3d at 245 (internal citations omitted).  Under New York law, courts should look to

---

[3] There is a distinction between victims who voluntarily transfer their property to the defendant as opposed to victims who involuntarily transfer their property. "It would be different, however, if the claimant were the victim of a theft or embezzlement and the forfeited funds were directly traceable to that offense." Stefan Cassella, Asset Forfeiture Law in the United States 825, n. 121 (2d ed. 2013). "In that case, the transfer of the property to the defendant would have been involuntary, and no transfer of title would have occurred." *Id. See United States v. BCCI Holdings (Luxembourg) S.A. (Petition of Republic of Panama)*, 833 F. Supp. 29, 31-32 (D.D.C. 1993) (the victim of an embezzlement of funds which were "secretly deposited … with BCCI" may be able to recover in the ancillary proceeding if it can trace its property to forfeited funds); *United States v. Monzon*, 2009 WL 361095, *2 (S.D. Fla. Feb. 9, 2009) (the robbery victim, Brinks, "has superior right, title, and interest in those stolen funds").

the following elements when deciding whether to recognize a constructive trust:

"(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 352 (2d Cir. 1992) (collecting cases).

In addition, "New York courts have clarified that as an equitable remedy, a constructive trust should not be imposed unless it is demonstrated that a legal remedy is inadequate." *In re First Cent. Fin. Corp.*, 377 F.3d 209, 215 (2d Cir. 2004).

Several of these elements are missing in the present case, beginning with the lack of a confidential or fiduciary relationship.  Purely commercial transactions do not give rise to a fiduciary relationship. *See Rodgers v. Roulette Records, Inc.*, 677 F. Supp. 731, 738–39 (S.D.N.Y. 1988).  Moreover, "[i]t is a firmly established principle that if a recipient of funds is not prohibited from using them as his own and commingling them with his own monies, a debtor-creditor, not a trust, relationship exists." *In re Black & Geddes, Inc. (Dampskibsselskabet AF 1912 Aktieselskab v. Black & Geddes, Inc.*), 35 B.R. 830, 836 (Bankr. S.D.N.Y. 1984) (collecting cases).  For example, the Second Circuit did not find there was a fiduciary duty in a case where two parties contracted to buy and sell currencies, and one party was under no special duty to segregate its client's funds from its general account. *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 353 (2d Cir. 1992).

Here, Petitioners allege no facts supporting a fiduciary relationship. The Petitioners' allegations do not show a fiduciary relationship between themselves and Sze

and/or Sze's associates.  The Petitioners have not alleged that Sze held funds transferred to him by Petitioners separately from other funds Sze accepted from other individuals.  Accordingly, the relationship between Sze and Petitioners is that of creditor-debtor.  *See, e.g., New York State Assn. of Life Ins. Underwriters v. Supt. of Insurance*, 37 A.D.2d 304, 325 N.Y.S.2d 172, 175-76 (N.Y. 1971).

It is also "hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer."  *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985); 1 Palmer, Restitution, § 2.14 (equitable interest must be traced to identifiable property).  As explained above, Petitioners do not trace funds that they caused to be transferred to Sze into any particular property subject to forfeiture.  Petitioners' allegations fail as a matter of law because the Petitioners have not alleged - and cannot allege, considering the nature of Sze's business - that their funds were segregated from other funds Sze controlled.

In *United States v. Schwimmer*, the court denied constructive trust under the same circumstances as here. 968 F.2d 1570, 1583 (2d Cir. 1992) (denying the imposition of a constructive trust in part because "[t]he District Court made no finding in this case that any of the property ordered forfeited was traceable to the commissions held in constructive trust" and in fact "none of the petitioners assert either title to or interest in any specific asset in the combined forfeiture pool").  The Petitioners do not cite any cases where a court imposed constructive trust—an equitable remedy that presupposes clean hands—in cases where petitioners are

14

participants in an illegal, underground business meant to evade traditional banking systems.

Next, "a constructive trust should not be imposed unless it is demonstrated that a legal remedy is inadequate." *Bertoni v. Catucc*i, 117 A.D.2d 892, 498 N.Y.S.2d 902, 905 (N.Y.  App. Div. 1986).  The Attorney General's discretionary authority to remit forfeited funds to victims of crime should be taken into account when evaluating this factor.  While the remission process, codified at Title 21, United States Code, Section 853(i)(1), is not an "adequate legal remedy" precluding the imposition of a constructive trust, *see Willisgement (Vermont), Ltd. v. United States*, 652 F.3d 236 (2d Cir. 2011), its existence nevertheless is relevant to a determination of whether there would be unjust enrichment in the absence of a constructive trust.

There can be no constructive trust where there is no unjust enrichment, because the purpose of a constructive trust is to "compel[] one who unfairly holds property to convey the property to the party to whom it justly belongs." *In the Matter of Berg*, 387 B.R. 524, 553-54 (Bkrtcy N.D. Ill. 2008). Here, the one that unfairly held the petitioners' funds was Sze, and he is not claiming a possessory interest in the Specific Properties. Here, Sze will not be unjustly enriched, as the property involved in the illegal money transmitting business is subject to forfeiture, and the remission program exists as a vehicle by which funds can be returned to any crime victims.

The Petitioners cite *United States v. Vilar*, No. 05-CR-621 (RJS), 2021 WL 4504699 (S.D.N.Y. Sept. 30, 2021) in support of their argument that a constructive

trust should be imposed in this case.  That case is not analogous to the facts of this case.  In *Vilar*, the parties agreed that the Petitioners met various elements of constructive trust, and disputed whether the petitioners met only two elements of constructive trust.  Here, the petitioners have not alleged a single fact to support imposition of a constructive trust.

The constructive trust cases cited by Petitioners are also distinguishable. *United State v. Ovid* was a securities fraud case where the petitioner was a defrauded investor who was challenging the forfeiture of funds from a limited partnership of which it was a part.  No. 09-CR-216, 2012 WL 2087084, at *1.  Before imposing a constructive trust, the district court first found that the petitioner had derivative standing.  *Id*. at *4.

Both *United States v. Lacoff* and *United States v. $822,694.81* were civil forfeiture actions applying Connecticut constructive trust law.  Like *Ovid*, they also both involve constructive trusts imposed on fraud victims.  In *Lacoff*, the claimants were receivers appointed to oversee insurance companies who had been looted by a convicted fraudster.  446 F. App'x 311, 312 (2d Cir. 2011).  In $822,694.81, the victim was a law firm who had deposited a supposed client's fraudulent check into its trust account and wired the remaining funds, at the direction of the fraudster, to an account that was soon after frozen and then seized for forfeiture.  No. 3:13-CV-00545, 2015 WL 13765353, at *1 (D. Conn. July 24, 2015).

Because New York law does not support the imposition of a constructive trust, the Petitioners are general creditors without standing under 21 U.S.C. § 853(n)(2).  *See*

*United States v. Pokerstars*, 2012 WL 1659177, *3 (S.D.N.Y. May 9, 2012) (granting motion to dismiss for lack of standing where claimant failed to satisfy the elements of a constructive trust under state law).

### III.    The October 2022 Petitions Should be Dismissed as Untimely

The petitions filed on October 18, 2022 should be dismissed as untimely. Petitioners claim that the petitions they filed on October 18, 2022 must be considered timely because they "were filed within the time explicitly set by this Court to do so." Doc. No. 106 at 14.  However, the Court provided Petitioners with a deadline by which to file petitions because Petitioners' counsel indicated to the Court during a telephonic status conference that it would like to file additional petitions.  During the same status conference, the Court stated that the government could oppose the additional petitions on timeliness grounds.  The Court's mere setting of a deadline for the purposes of case management did not mean that the petitions would be deemed timely if filed within that deadline.  When setting a date by which the petitions must be filed, the Court never represented that it would accept the petitions as timely—it simply allowed the Petitioners to make additional filing by that date.

In a misguided attempt to justify their untimely petitions, Petitioners claim that "the substitute Petitions are for the same assets—and based on specific checks— underlying the Wang Petitions, and that the government was timely put on notice as being in issue on September 13, 2022." Doc. No. 106 at 15.  However, as explained in the government's motion to dismiss, the October 2022 Petitions amend the identities of the parties making the petitions and amend the nature of the ownership interest asserted.

When combined with the Petitioners' belated attempt to now argue for the imposition of a constructive trust, it is clear that Petitioners are simply grasping for any legal theory possible to justify their petitions.  The October 18, 2022 petitions should be deemed untimely, where (i) the Petitioners had counsel who filed timely petitions, and (ii) the October 18, 2022 petitions are untimely substitutions similar to those other courts have dismissed in other cases.  *See United States v. Chicago*, 2017 WL 1024276 (S.D. Ala. Mar. 16, 2017) (denying motion to amend claim to correct deficiencies once 30-day claim period expired).

**CONCLUSION**

For the reasons given, the Court should grant the Government's motion and dismiss the Petitions, with prejudice, in their entirety.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By: */s/ Sarah Devlin*
Sarah Devlin
Assistant United States Attorney

Dated:     December 6, 2022
           Newark, New Jersey

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 6, 2022, I caused a copy of the

foregoing to be served by electronic filing via Pacer/ECF on the following attorney:

(1) Matthew Eyet, Esq., for Petitioners

/s Sarah Devlin
Sarah Devlin
Assistant United States Attorney