Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

                Plaintiff,

        v.

DA YING SZE,

                Defendant.

Criminal Action No. 22-0141 (ES)

OPINION

SALAS, DISTRICT JUDGE

In this criminal action, Defendant Da Ying Sze pleaded guilty to federal offenses based upon his role in operating an unlicensed money transmitting business. (*See* D.E. Nos. 77 & 80). As part of his plea agreement, Defendant agreed to forfeit all of his right, title, and interest, in any and all property involved in, or traceable to the federal offenses. (*See* D.E. No. 80 at 4). As a result, the Court entered a Consent and Preliminary Order of Forfeiture, providing for the forfeiture of specific property, which Defendant admitted had the requisite nexus to the offenses to which Defendant pleaded guilty, including funds held in various bank accounts. (D.E. No. 82 at 2–4). Petitioners Chi T. Cheung; Shi Chun Lin and Qiu Fang Chen; Yongning Wang; Hui Jiang; Wei Guang Wang; Zhi Hong Chen; Xiu Yu Jiang; Na Na Wang; Jing Ping Lin; and Mao Qing Chen have filed petitions for an ancillary hearing pursuant to 21 U.S.C. § 853(n) to assert their interest in funds that have been ordered forfeited to the United States in the Consent and Preliminary Order of Forfeiture. (*See* D.E. Nos. 86–88 & 91–97). Before the Court is the Government's motion to dismiss the third-party Petitions pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A). (D.E. No. 104 ("Mov. Br.")). Having considered the parties' submissions, the Court decides this

matter without oral argument.  *See* L. Civ. R. 78.1(b); L. Crim. R. 1.1.  For the following reasons, the Government's motion is **GRANTED,** and the Petitions are dismissed *with prejudice*.

## I.    BACKGROUND

### A.    Factual Background

On May 10, 2021, Defendant Da Ying Sze was arrested and charged in a criminal complaint with conducting an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 1960(a), (b)(1)(A), and (b)(1)(B).  (D.E. No. 1).  As alleged in the Criminal Complaint, from in or around 2016 through in or around 2021, Sze and his co-conspirators conducted, controlled, managed, supervised, directed, and owned a large-scale unlicensed money transmitting business operating in New Jersey, New York, Pennsylvania, and elsewhere.  (*Id.*; D.E. No. 80).

On or about February 22, 2022, Defendant pleaded guilty to an Information that charged him with (i) conspiracy to engage in monetary transactions in property derived from specified unlawful activity, contrary to 18 U.S.C. § 1957(a), in violation of 18 U.S.C. § 1956(h) (Count One); (ii) operation and aiding and abetting the operation of an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 1960(a), (b)(1)(A), (b)(1)(B), and (b)(1)(C) (Count Two); and (iii) bribery of bank employees, in violation of 18 U.S.C. § 215(a)(1) (Count Three).  (*See* D.E. Nos. 77 & 80).  As part of his plea agreement, Defendant consented to the forfeiture, pursuant to 18 U.S.C. § 982(a)(1), of any and all property involved in, or traceable to, the violations of 18 U.S.C. §§ 1956(h) and 1960 charged in Counts One and Two of the Information.  (*See* D.E. No. 80 at 4).  Defendant further agreed to forfeit all of his right, title, and interest in the sums of money and property seized by law enforcement during the investigation of the Defendant, which he admitted had the requisite nexus to the offenses charged in the Information and were therefore forfeitable to the United States pursuant to 18 U.S.C. § 982(a)(1).  (*Id*. at 4–5)

Also on or about February 22, 2022, pursuant to Rule 32.2(b)(1) and (b)(2) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 982(a)(1), the Court entered a Consent and Preliminary Order of Forfeiture, providing for the forfeiture of specific property including funds seized from the following accounts:

- $325,029.45 seized from Bank of America account number ending in 2798, held in the name of Mei Sewing Corporation;

- $160,348.96 seized from Royal Business Bank account number ending in 2321, held in the name of Asia Sewing Corporation;

- $416,889 seized from Royal Business Bank account number ending in 7326, held in the name of Fai Trading NYC Corporation;

- $41,246.60 seized from Amerasia Bank account number ending in 0782, held in the name of Yufeng Gao;

- $69,608.36 seized from Amerasia Bank account number ending in 5384, held in the name of Broadway Fashion USA Corporation;

- $136,103.90 seized from Amerasia Bank account number ending in 2253, Mei Sewing Corporation and Xiumei Lin;

- $220,997.10 seized from Citibank account number ending in 8007, held in the name of Yufeng Gao;

- $235,428.80 seized from Citibank account number ending in 3816, held in the name of Yunqin Liu;

- $1,022.35 seized from Citibank account number ending in 3824, held in the name of Yunqin Lin;

- $53,780 seized from Citibank account number ending in 8424, held in the name of Fai Ngai;

- $3,200.24 seized from Citibank account number ending in 8432, held in the name of Fai Ngai;

- $105,164.41 seized from JP Morgan Chase account number ending in 0106, held in the name of Mei GoGo Trading Corporation;

- $164,957.02 seized from Capital One Bank account number ending in 3333, held in the name of Broadway Fashion USA Corporation; and

- $191,110.94 seized from Capital One Bank account number ending in 5528, held in the name of Fair Trading NYC Corporation

(D.E. No. 82 at 2–4).  After the Court entered the Consent and Preliminary Order of Forfeiture, ten sets of third parties filed petitions (together "Petitions") for an ancillary hearing pursuant to 21 U.S.C. § 853(n), asserting their interest in funds that have been ordered forfeited to the United States in the Consent and Preliminary Order of Forfeiture.  (*See* D.E. Nos. 86–88 & 91–97).

First, on September 13, 2022, two sets of petitioners, including Chi T. Cheung, as well as Shi Chun Lin, and Qiu Fang Chen, filed petitions for an ancillary hearing, asserting an interest in the disposition of funds represented by checks (together, "Check Payee Petitioners").  Petitioner Chi T. Cheung filed a petition for an ancillary hearing, asserting an interest in the disposition of funds represented by two checks, drafted in May 2021, from Citibank account numbers ending in 3816 and 8007, which were frozen pursuant to the Consent and Preliminary Order of Forfeiture. (D.E. No. 86 ("Cheung Petition"); D.E. No. 86-1, Ex. A to Cheung Petition).  He bases his purported ownership interest in the funds on his status as the "Named Payee" on the checks. (Cheung Petition at 1–2).  Petitioners Shi Chun Lin and Qiu Fang Chen filed a joint petition for an ancillary hearing, asserting an interest in the disposition of funds represented by three checks, drafted in May 2021, from Amerasia Bank account number ending in 0782, which was frozen pursuant to the Consent and Preliminary Order of Forfeiture.  (D.E. No. 87 ("Lin & Chen Petition"); D.E. No. 87-1, Ex. A to Lin & Chen Petition).  Like Chi T. Cheung, Shi Chun Lin and Qiu Fang Chen base their purported ownership interest in the funds on their status as the "Named Payee[s]" on various checks.  (Lin & Chen Petition at 1–2).

Second, on September 13, 2022, Petitioner Yongning Wang filed a petition for an ancillary hearing, asserting an interest in the disposition of funds represented by forty-six checks. (D.E. No. 88 ("Wang Petition"); D.E. No. 88-1, Ex. A to Wang Petition).  The basis for Wang's purported ownership interest in the funds is common law subrogation.  (Wang Petition at 1–2).  More specifically, in his petition, Wang states that "[w]hile the Subject Checks were drafted as payable to various individuals (the 'Payees'), they were provided to Petitioner to distribute to the Payees in satisfaction of Petitioner's obligations to the Payees."  (*Id.* at 3).  Wang then states that, "upon accepting the subject checks he was entitled to instruct the payees to withdraw those funds to satisfy his liability to them."  (*Id.*)  None of the checks in which Wang claims an interest list Wang as the payee for the check.  (*Id.* at 1–2; D.E. No. 88-1, Ex. A to Wang Petition).

Third, on October 18, 2022, seven additional petitioners including Hui Jiang; Wei Guang Wang; Zhi Hong Chen; Xiu Yu Jiang; Na Na Wang; Jing Ping Lin; and Mao Qing Chen filed petitions for an ancillary hearing, asserting an interest in the disposition of funds represented by checks (together the "October Petitioners").  (D.E. Nos. 91–97).  Hui Jiang claims an interest in funds represented by two checks, drafted in May 2021, from Amerasia Bank account number ending in 0782, which was frozen pursuant to the Consent and Preliminary Order of Forfeiture. (D.E. No. 91 ("Jiang Petition"); D.E. No. 91-1, Ex. A to Jiang Petition).  She bases her purported ownership interest in the funds on her status as the "Named Payee" on the checks.  (Jiang Petition at 1–2).  Wei Guang Wang claims an interest in funds represented by one check, drafted in May 2021, from Amerasia Bank account number ending in 0782, which was frozen pursuant to the Consent and Preliminary Order of Forfeiture.  (D.E. No. 92 ("Guang Petition"); D.E. No. 92-1, Ex. A to Guang Petition).  He bases his purported ownership interest in the funds on his status as the "Named Payee" on the check.  (Guang Petition at 1–2).  Zhi Hong Chen claims an interest in

funds represented by two checks, drafted in May 2021, from Amerasia Bank account number ending in 0782, which was frozen pursuant to the Consent and Preliminary Order of Forfeiture. (D.E. No. 93 ("Chen Petition"); D.E. No. 93-1, Ex. A to Chen Petition).  She bases her purported ownership interest in the funds on her status as the "Named Payee" on the checks.  (Chen Petition at 1–2).  Xiu Yu Jiang claims an interest in funds represented by one check, drafted in May 2021, from Amerasia Bank account number ending in 0782, which was frozen pursuant to the Consent and Preliminary Order of Forfeiture.  (D.E. No. 94 ("Xiu Yu Petition"); D.E. No. 94-1, Ex. A to Jiang Petition).  She bases her purported ownership interest in the funds on her status as the "Named Payee" on the check.  (Xiu Yu at 1–2).  Na Na Wang claims an interest in funds represented by one check, drafted in April 2021, from Amerasia Bank account number ending in 0782, which was frozen pursuant to the Consent and Preliminary Order of Forfeiture.  (D.E. No. 95 ("N.N Wang Petition"); D.E. No. 95-1, Ex. A to N.N. Wang Petition).  She bases her purported ownership interest in the funds on her status as the "Named Payee" on the check.  (N.N. Wang Petition at 1–2).  Jing Ping Lin claims an interest in funds represented by one check, drafted in May 2021, from Amerasia Bank account number ending in 0782, which was frozen pursuant to the Consent and Preliminary Order of Forfeiture.  (D.E. No. 96 ("Lin Petition"); D.E. No. 96-1, Ex. A to Lin Petition).  She bases her purported ownership interest in the funds on her status as the "Named Payee" on the check.  (Lin Petition at 1–2).  Finally, Mao Qing Chen claims an interest in funds represented by one check, drafted in May 2021, from an Amerasia Bank account which was allegedly frozen pursuant to the Consent and Preliminary Order of Forfeiture.  (D.E. No. 97 ("M. Chen Petition"); D.E. No. 96-1, Ex. A to M. Chen Petition).  He bases his purported ownership interest in the funds on his status as the "Named Payee" on the check.  (M. Chen Petition at 1–2).  Notably, all of the checks included in the October 2022 Petitions were previously listed

in the Petition filed by Yongning Wang on September 13, 2022, which claimed an interest in the disposition of funds represented by forty-six checks.[1]

In their opposition brief, Petitioners request that to the extent the October Petitions are based on the same underlying checks as portions of the Wang Petition, those portions of Wang's Petition be deemed superseded by the October Petitions.   (D.E. No. 106 ("Opp. Br.") at 1 n.1). They clarify that they do not oppose dismissing any portions of Wang's Petition that have not been superseded.  (*Id.*).  As such, for purposes of this motion, the Court considers only the Petitions filed by the Check Payee Petitioners and the October Petitioners.

### B.        Procedural History

On November 15, 2022, the government moved to dismiss all of the Petitions pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A) and Federal Rule of Civil Procedure 12(b)(1), arguing that the Petitioners fail to allege a specific interest in the funds subject to forfeiture and thus lack standing to contest the forfeiture. (*See* Mov. Br.).  On November 30, 2022, the Petitioners filed an Opposition, arguing that they have a legal interest in the forfeited funds sufficient to satisfy standing under a theory of constructive trust.   (*See* Opp. Br.).   On December 6, 2022, the Government filed a Reply.  (D.E. No. 108 ("Reply")).

## II.   LEGAL STANDARD

Criminal forfeiture proceeds in two stages.  *See generally* 21 U.S.C. § 853; Fed. R. Crim. P. 32.2.  During the first stage, "only the Government and defendant are involved—the court makes a preliminary forfeiture determination 'without regard to any third party's interest,' which can only

---

[1]       While the Government notes that one of the checks listed in the Chen Petition, check number 3859, was not listed in the Petition filed by Yongning Wang on September 13, 2022, it appears that the Wang Petition mistakenly labeled that check as check number 3589.  (Wang Petition at 2).  And check number 3859 is included as an exhibit in the Wang Petition.  (Ex. A to Wang Petition at 32 (ECF Pagination)).  As such, all of the checks included in the October 2022 Petitions were previously listed in the Petition filed by Yongning Wang on September 13, 2022

be considered later after the preliminary order is issued." *United States v. Nicoll*, 711 F. App'x 108, 110 (3d Cir. 2017) (citing Fed. R. Crim. P. 32.2(b)(2)(A)). "At this stage, the 'requisite nexus' analysis affects only the rights of the defendant. That is, the Rule's purpose is to require that the Government demonstrate why forfeiture of the defendant's property is appropriate to ensure that it does not wrongly seize property unrelated to a defendant's criminal activity." *Id.* "Third parties are immaterial to the requisite nexus analysis." *Id.* In fact, they are expressly prohibited from intervening in it. 21 U.S.C. § 853(k). During the second stage, any third party who asserts "a legal interest in property which has been ordered forfeited to the United States" may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property" before the Court enters a final forfeiture order. 21 U.S.C § 853(n)(2). *Nicoll*, 711 F. App'x at 111 (citing Fed. R. Crim. P. 32.2(c)). This case is currently at stage two.

A petitioner must "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3). To initiate an ancillary proceeding, a third-party petitioner must demonstrate that she has a legally sufficient interest in the forfeited property to give her standing to challenge the forfeiture. *See* 21 U.S.C. § 853(n)(2). § 853(n) provides two ways by which the third-party petitioner may establish that she has an interest in forfeited property which defeats the government's interest in the forfeited property. 21 U.S.C. § 853(n)(6). More specifically, under Section 853(n)(6), the Court must amend the preliminary order of forfeiture if a petitioner is able to establish, by a preponderance of the evidence that:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right,

> title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section; the court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853(n)(6)(A) & (B).  Here, the Check Payee Petitioners and October Petitioners rely on 21 U.S.C. § 853(n)(6)(A) only.[2]  (Opp. Br. at 7).

Petitions filed under § 853(n) initiate a quasi-civil, ancillary proceeding, in which the Court "may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason."  Fed. R. Crim. P. 32.2(c)(1)(A).  "A motion to dismiss a third-party petition 'should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b).'"  *United States v. Watts*, 786 F.3d 152, 161 (2d Cir. 2015) (citation omitted).  Accordingly, a court must take the facts alleged in the petition as true and determine if the petitioner plausibly alleged facts giving rise to a claim for relief.  *See United States v. Nicoll*, No. 13-0385, 2015 WL 13628130, at *2 (D.N.J. Apr. 29, 2015); *see* Fed. R. Crim. P. 32.2(c)(1)(A) ("For purposes of the motion [to dismiss], the facts set forth in the petition are assumed to be true.").  Nevertheless, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim

---

[2]    More specifically, Petitioners provide that they "do not make their claim as bona fide purchasers for value." (Opp. Br. at 7).  While the Petitioners cite to 21 U.S.C. § 853(n)(6)(A), in making this statement, the legal interests of bona fide purchasers for value are provided for in 21 U.S.C. § 853(n)(6)(B).  And the Petitioners go on to explicitly provide that they are seeking to recover funds under "Section 853(n)(6)(A) as the true owners with superior interest." (*Id.*).  As such, the Court considers the Petitioners' interest under Section 853(n)(6)(A) only.

is plausible on its face when the petitioner "pleads factual content that allows the court to draw the reasonable inference" that he is entitled to relief. *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that a petitioner is entitled to relief. *Id.* (quoting *Twombly*, 550 U.S. at 556). On a motion to dismiss for lack of standing under Rule 12(b)(1), the burden of proving standing is on the party asserting it. *See Ballentine v. U.S.,* 486 F.3d 806, 810 (3d. Cir. 2007)

## III.   DISCUSSION

### A.   The Check Payee Petitioners and the October Petitioners Cannot Initiate an Ancillary Proceeding Because They Are Only General Creditors

The Government moves to dismiss all of the Petitions at issue in this case, arguing that the Check Payee Petitioners and the October Petitioners have failed to allege a specific interest in the funds subject to forfeiture and thus lack standing to contest the forfeiture. (*See generally* Mov. Br.). More specifically, the Government contends that the Check Payee Petitioners and the October 2022 Petitioners are unsecured general creditors without an identifiable legal interest in the particular assets subject to forfeiture and as a result cannot pursue their claims in an ancillary proceeding. (*Id.* at 25–28).[3] For the reasons set forth below, the Court agrees.

Not every creditor of a criminal defendant has standing to pursue a claim in an ancillary proceeding. "Congress did not intend § 853(n) to serve as a vehicle by which *all* innocent third parties who are aggrieved by an order of criminal forfeiture can petition for judicial relief." *United*

---

[3]       In its moving brief, the Government points out that the Check Payee Petitioners and October Petitioners have improperly asserted that "the government cannot establish that those funds were the proceeds of or traceable to the proceeds of the conduct of conviction." (Mov. Br. at 23 (citing Cheung Petition, Lin and Chen Petition & Wang Petition)). In their Opposition Brief, the Check Payee Petitioners and October Petitioners do not respond to this argument or try to contend that the government cannot establish that those funds were the proceeds of or traceable to the proceeds of the conduct of conviction. (*See generally* Opp. Br.). As such, the Court finds any such argument by the Check Payee Petitioners and October Petitioners waived. *Market v. PNC Fin. Servs. Grp.*, 828 F. Supp. 2d 765, 773 (E.D. Pa. 2011) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant in regard to the contested issue.").

*States v. Lavin,* 942 F.2d 177, 185 (3rd Cir.1991) (emphasis in original).  Rather, to establish statutory standing to challenge a forfeiture order, a petitioner must demonstrate that he has a "legal interest" in the forfeited property, as specified by 21 U.S.C. § 853(n)(2), which states, in relevant part, that:

> Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of this alleged interest in the property.

21 U.S.C. § 853(n)(2).  Standing determinations under § 853(n) involve questions of both state and federal law.  State law—or the law of the jurisdiction that created the property interest being asserted—determines what interest the claimant has in the forfeited property.  *Watts*, 786 F.3d at 161.  However, as a matter of federal law, only one claiming an interest in the specific property that is the subject of a preliminary forfeiture order has standing to bring a claim.  *United States v. Egan*, No. 10-0191, 2012 WL 3705013, at *6 (S.D.N.Y. Aug. 28, 2012) (citing *DSI Assocs. LLC v. United States,* 496 F.3d 175, 184 (2d Cir.2007)).

A third-party petitioner seeking to assert a claim under § 853(n)(2) must show an "identifiable legal interest" in a "particular, specific asset" that is part of the forfeited property, "as opposed to a general interest in an entire forfeited estate or account."  *United States v. Ribadeneira,* 105 F.3d 833, 836 (2d Cir. 1997).  This interest cannot be the general interest of a creditor.  *Id.*  Courts have held that general creditors lack the property interest contemplated by the text of Section 853(n)(2), because general creditors, by definition, do not have a property interest in a particular asset and as such lack standing to pursue a claim in an ancillary proceeding.  *See id.*; *see also United States v. White*, 675 F.3d 1073, 1080 (8th Cir. 2012) (holding "that a general creditor does not have standing to claim an interest in a particular forfeited asset.").

Further, to bring an ancillary proceeding, a third-party petitioner must establish that she has a "right, title, or interest" under § 853(n)(6).  21 U.S.C. § 853(n)(6).  Several courts have indicated that an unsecured, general creditor also does not have an interest in forfeited property because they have no identifiable "right, title, or interest" under § 853(n)(6).  *Lavin,* 942 F.2d at 187 n.12 (suggesting that a general creditor could not assert a claim under § 853(n)(6)(A) "because it cannot identify in Lavin's estate the specific funds that were embezzled from it, and thus can assert no more than a general claim against Lavin's estate"); *United States v. Stewart*, No. 96-0583, 1998 WL 961363, at \*2 (E.D. Pa. Dec. 11, 1998), *aff'd*, 189 F.3d 465 (3d Cir. 1999) (stating that general unsecured creditors do not possess a right, title, or interest in specific assets that is superior to that of the debtor under § 853(n)(6)(A), nor are they bona fide purchasers for value under § 853(n)(6)(B)); *United States v. BCCI Holdings (Luxembourg), S.A.,* 46 F.3d 1185, 1191–92 (D.C. Cir. 1995) (finding that general creditors failed to state a claim under RICO forfeiture statute "identical" to § 853(n)); *United States v. Campos,* 859 F.2d 1233, 1235–40 (6th Cir.1988). Here, the Court finds that the Check Payee Petitioners and October Petitioners are only general creditors and thus lack a "legal interest" in the forfeited property under 21 U.S.C. § 853(n)(2), and have no identifiable "right, title, or interest" under § 853(n)(6).

To start, the Court finds that the Check Payee Petitioners and October Petitioners lack a "legal interest" in the forfeited property under 21 U.S.C. § 853(n)(2).  The Second Circuit's decision in *United States v. Ribadeneira,* 105 F.3d 833 (2d Cir. 1997) is instructive in the Court's analysis of this issue.  In *Ribadeneira*, the defendants pled guilty to conspiracy and money laundering, and agreed to the criminal forfeiture of certain assets, including assets in certain accounts.  *Ribadeneira,* 105 F.3d at 834.  The petitioners in that case were businesses based in Ecuador which converted Ecuadorian currency into U.S. dollars by purchasing checks drawn on

the forfeited accounts in the U.S. *Id.* When the assets in those accounts were frozen because of

the money laundering activities of the defendants, the petitioners were left unable to redeem the

checks they had purchased, and they accordingly filed petitions under 21 U.S.C. § 853(n)(2) to

modify the order of forfeiture. *Id.* The Second Circuit held that the petitioners did not have a §

853(n)(6) "right, title, or interest" to the forfeited assets, and as such were without a § 853(n)(2)

"legal interest." *Id.* at 834–36. In so finding, the court relied on the reasoning employed by the

district court, which explained:

> [because] the specific property in which petitioners assert both
> withdrawal and ownership rights is by its very nature incapable of
> identification, petitioners can not claim a sufficiently identifiable
> legal interest to satisfy subsection n(2). Dollars are fungible. As
> holders of checks, as opposed to security interests, petitioners are
> unable to assert rights to a particular asset or specific funds. Like
> bank depositors, petitioners are general creditors who have no
> interest in the specific accounts to which their deposits might be
> traced, only in the defendant's estate as a whole—and therefore can
> have no interest in particular assets forfeited, . . . unless they have
> already secured a judgment against the debtor and perfected a lien
> against a particular item.

*Id.* at 836 (citing *United States v. Ribadeneira*, 920 F. Supp. 553, 555 (S.D.N.Y.1996)). In other

words, the Second Circuit reasoned, "[u]nlike purchasers of specific antique coins or earmarked

out-of-print bills, petitioners here can point to no particular asset and call it their own." *Id.* As

such, because the petitioners had no specific interest in property greater than that of a general

creditor, the court found that they lacked a § 853(n)(6) "right, title, or interest," to the forfeited

assets and as such were without a § 853(n)(2) "legal interest," and therefore lacked standing.[4] *Id.*

---

[4]      In their Opposition Brief, the petitioners suggest that *Ribadeneira* has been overruled by *Willis Mgt.
(Vermont), Ltd. v United States*, 652 F.3d 236, 238 (2d Cir. 2011) (Opp. Br. at 7). Nevertheless, *Ribadeneira*'s
holding, which explained that general creditors lack standing to contest a final order of forfeiture, remains good law.
In *Ribadeneira*, the Second Circuit noted in a footnote that the district court correctly declined to apply a constructive
trust. *Ribadeneira,* 105 F.3d at 837 n.5. A "a constructive trust arises when, in the eyes of equity, a [person] is the
true owner of . . . [the] property at issue due to his right to the underlying assets from which it derives." *Watts*, 786
F.3d at 168 (internal quotations and citation omitted). The *Ribadeneira* court noted that the district court correctly
declined to apply a constructive trust in part "because 21 U.S.C. § 853(i) provides an adequate legal remedy which

The same conclusion is warranted here.  Like in *Ribadeneira*, here, the Check Payee Petitioners and the October Petitioners assert an interest based on their status as holders of checks drawn on particular bank accounts.  In other words, they assert an interest based essentially on "an informal debt obligation."  (Mov. Br. at 25).  However, a mere right to payment does not give the check holder an "identifiable legal interest" in a "particular, specific asset" that is part of the forfeited property.  *Ribadeneira*, 105 F.3d at 836; *see also United States v. BCCI Holdings (Luxembourg), S.A.*, No. 91-0655, 1994 WL 914458, at *4 (D.D.C. Oct. 28, 1994) ("[R]eceipt of a check gives the recipient no right in the funds held by the bank on the drawer's account.").  Rather, "as holders of checks, as opposed to security interests, [P]etitioners are unable to assert rights to a particular asset or specific funds."  *Ribadeneira*, 105 F.3d at 836 (citing *Ribadeneira*, 920 F. Supp. at 555).  As the Government points out (Mov. Br. at 27), rather than specifying that they have an interest in a particular bank account, the Check Payee Petitioners and October Petitioners assert only a general interest in "the disposition of the funds represented by the negotiable checks" and in "the disposition of the funds located in Defendant's financial accounts (or that were located in such accounts prior to their forfeiture to the United States) to the extent they represent the funds that were to be disbursed pursuant to the Subject Checks."  (*See, e.g.,* Cheung Petition at 1–2).  Neither the Check Payee Petitioners nor the October Petitioners have alleged any property interest in the specific property subject to forfeiture apart from a general right to payment akin to any creditor's.  Accordingly, at most, the Check Payee Petitioners and October Petitioners are general, unsecured creditors that are seeking to collect funds represented by checks

---

obviates the need for application of an equitable remedy."  *Ribadeneira*, 105 F.3d at 837 n.5 (2d Cir. 1997).  In *Willis Mgt.*, the Second Circuit merely found that this footnote was not persuasive because § 853(i) did not provide an adequate legal remedy to the petitioners in that case.  *Willis Mgt.*, 652 F.3d at 243.  However, the Court in *Willis Mgt.* did not criticize the *Ribadeneira* court's holding that general creditors lack standing to contest a final order of forfeiture.

based on an informal debt obligation.  However, as general creditors, the Check Payee Petitioners and October Petitioners do not have standing to contest forfeiture through an ancillary proceeding because they have no interest in the specific accounts to which the funds represented by their checks may be traced, only to the Defendant's "estate as a whole—and therefore can have no interest in particular assets forfeited." *Ribadeneira,* 105 F.3d at 836 (citing *Ribadeneira*, 920 F. Supp. at 555); *see also United States v. Mazza-Alaluf*, No. 07-0403, 2011 WL 308266, at *3 (S.D.N.Y. Jan. 27, 2011) (finding that the petitioners lacked standing because they did not assert that their loans had any nexus to the bank account that was subject to the preliminary order of forfeiture, and as a result could not plausibly connect their investments to the forfeited property). As the district court in *Ribadeneira* pointed out, as general creditors, the Check Payee Petitioners and October Petitioners "can have no interest in particular assets forfeited, . . . unless they have already secured a judgment against the debtor and perfected a lien against a particular item." *Ribadeneira*, 920 F. Supp. at 555; *United States v. Madoff*, No. 09-0213, 2012 WL 1142292, at *4 (S.D.N.Y. Apr. 3, 2012) ("To have a claim in the specific property, a creditor, therefore, must secure a judgment or perfect a lien against a particular item.").  And here, the Check Payee Petitioners and October Petitioners make no allegations that they have secured a judgment or perfected a lien against the Defendant.

Further, to the extent the Check Payee Petitioners and October Petitioners assert an interest in the currency from the accounts listed in the preliminary order of forfeiture, a third-party petitioner "typically cannot claim a specific interest in dollars because they are fungible, and a petitioner cannot identify the specific dollars in which she claims an interest." *United States v. Ceballos-Lepe*, 977 F. Supp. 2d 1085, 1090 (D. Utah 2013); *United States v. Jewelry*, No. 14-60094, 2015 WL 9700962, at *3 (S.D. Fla. Dec. 23, 2015), *report and recommendation adopted*,

No. 14- 60094, 2016 WL 183314 (S.D. Fla. Jan. 13, 2016) ("Nor can Americana establish standing by alternatively seeking the cash value that Defendants allegedly agreed to pay for its scrap gold. Because money is a fungible item, Americana cannot demonstrate a particular or secured interest in specific, identifiable forfeited funds."). "Unlike purchasers of specific antique coins or earmarked out-of-print bills, petitioners here can point to no particular asset and call it their own." *Ribadeneira,* 105 F.3d at 836. As such, assuming the truth of the allegations set forth in their Petitions, the Check Payee Petitioners and October Petitioners cannot demonstrate an "identifiable legal interest" in a "particular, specific asset" that is part of the forfeited property under § 853(n)(2), and they therefore lack statutory standing. *Id.*[5]

Finally, though the Check Payee Petitioners and October Petitioners assert that they are owed the funds represented by their checks because they lost those funds based on fraud (Opp. Br. at 7), courts have held that fraud victims that voluntarily transfer funds to a defendant surrender title to that property and as such, have no greater interest in the property than do general creditors. *See United States v. Eldick*, 223 F. App'x. 837, 840 (11th Cir. 2007) ("A fraud victim who voluntarily transfers property to the defendant has a cause of action in tort against the defendant but has no greater interest in the forfeited property than does any other general creditor.").

---

[5]     The Petitioners' attempts to distinguish *Ribadeneira* are unavailing. To start, the Check Payee Petitioners and October Petitioners point out, that unlike in *Ribadeneira*, they are not making their claim as bona fide purchasers for value under Section 853(n)(6)(B). (Opp. Br. at 7). Nevertheless, *Ribadeneira's* holding was not confined to Section 853(n)(6)(B). Rather, the Court found that the Petitioners did not have a § 853(n)(2) "legal interest" and therefore lacked standing. *Ribadeneira*, 105 F.3d at 836. And regardless, multiple courts have also held that an unsecured, general creditor does not have an interest in forfeited property because they have no identifiable "right, title, or interest" under § 853(n)(6)(A). *Lavin*, 942 F.2d at 187 n. 12; *Stewart*, 1998 WL 961363, at *2. As such, this argument is unavailing. Further, the Check Payee Petitioners and October Petitioners assert that unlike in *Ribadeneira*, the Petitioners in this case do not claim to have purchased checks. (Opp. Br. at 7). Nevertheless, as explained above, like in *Ribadeneira*, here, the Check Payee Petitioners and the October Petitioners assert an interest based on their status as holders of checks drawn on particular bank accounts, essentially based on an informal debt obligation. *Ribadeneira*, 105 F.3d at 836; (Mov. Br. at 25). And "as holders of checks, as opposed to security interests, [P]etitioners are unable to assert rights to a particular asset or specific funds." *Ribadeneira*, 105 F.3d at 836 (citing *Ribadeneira*, 920 F. Supp. at 555); *Mazza-Alaluf*, 2011 WL 308266, at *3. As such, their arguments are unavailing.

The Check Payee Petitioners and October Petitioner lack an identifiable "right, title, or interest" under § 853(n)(6)(A) for the same reasons. *Lavin,* 942 F.2d at 187 n. 12 (suggesting that a general creditor could not assert a claim under § 853(n)(6)(A) "because it cannot identify in Lavin's estate the specific funds that were embezzled from it, and thus can assert no more than a general claim against Lavin's estate"); *Strube,* 58 F. Supp. 2d at 581 ("[A] general creditor can never have an interest in specific forfeited property, no matter what the relative size of his claim vis-à-vis the value of the defendant's post-forfeiture estate. Were it otherwise, the court litigating the forfeiture issue would be converted into a bankruptcy court and would not be able to grant forfeiture to the government until it determined that no general creditor would be unable to satisfy its claim against the defendant."); *Stewart*, 1998 WL 961363, at *2 (stating that general unsecured creditors do not possess a right, title, or interest in specific assets that is superior to that of the debtor under § 853(n)(6)(A), nor are they bona fide purchasers for value under § 853(n)(6)(B)); *BCCI Holdings (Luxembourg), S.A.,* 46 F.3d at 1191–92; *Campos,* 859 F.2d at 1235–40.

### B. The Check Payee Petitioners and October Petitioners Cannot Initiate an Ancillary Proceeding Under a Theory of Constructive Trust

The Check Payee Petitioners and October Petitioners assert that they possess a "legal interest" in the forfeited property under 21 U.S.C. § 853(n)(2) sufficient to satisfy standing and an identifiable "right, title, or interest" under § 853(n)(6)(A), under a theory of constructive trust. More specifically, they assert that their interest in the funds represented by their checks was greater than Defendant's because Defendant was simply transmitting those funds on their behalf. (Opp. Br. at 6). According to the Check Payee Petitioners and October Petitioners, "[n]o title was transferred, and the funds were only intended to be in Defendant's bank account temporarily during that process." (*Id.*). In fact, they assert that "Defendant had already given the funds back to Petitioners by drafting and delivering the Checks." (*Id.*). As such, they assert that Defendant was

17

simply holding those funds in a constructive trust for them.  (*Id.*).  In reply, the Government points

out that no theory of constructive trust was asserted in any of the Petitions and contends that the

Petitioners may not amend their Petitions in an opposition brief.  (Reply at 9).  And regardless, the

Government contends that the Check Payee Petitioners and October Petitioners do not meet the

requirements for the imposition of a constructive trust.  (*Id.* at 12–17).  For the reasons set forth

below, the Court agrees with the Government.

In general terms, "a constructive trust arises when, in the eyes of equity, a [person] is the

true owner of . . . [the] property at issue due to his right to the underlying assets from which it

derives."  *Watts*, 786 F.3d at 168 (internal quotation marks and omitted).  In other words, the assets

of a constructive trust belong to the trust's beneficiaries, rather than a criminal defendant holding

the trust's assets.  *See id*.  As such, a petitioner who is the beneficiary of a constructive trust enjoys

a "legal interest" in the trust's property for purposes of an ancillary proceeding.  *Willis Mgmt.*, 652

F.3d at 242.  While state law determines whether a petitioner is entitled to a constructive trust—

that is, the nature of the petitioner's interest in the property—federal law determines whether that

interest is a "legal interest" under § 853(n).  *Fed. Ins. Co. v. United States*, 882 F.3d 348, 370–71

(2d Cir. 2018); *United States v. Ramunno*, 599 F.3d 1269, 1273–74 (11th Cir. 2010).

As an initial matter, the Government contends that the Check Payee Petitioners and

October Petitioners cannot claim a legal interest under a theory of constructive trust because no

such theory was alleged in their Petitions.  (Reply at 9–12).  Citing to the Second Circuit's decision

in *Fed. Ins. Co. v. United States,* the Petitioners assert that "it is not necessary for claimants to

affirmatively plead a constructive trust in their petition."  (Opp. Br. at 9 n.9).  *Fed. Ins. Co. v.

United States*, however, does not stand for such a proposition.  As the Government points out

(Reply at 10), in that case, even though the petitioners did not allege a constructive trust legal

18

theory in their petitions, the court found that "facts on which [the] constructive trust theory relies were adequately alleged in [the] petition." *Fed. Ins. Co.*, 882 F.3d at 352. Such is not the case here. More specifically, for the reasons set forth below, the Court finds that the Check Payee Petitioners and October Petitioners have failed to allege any facts in their Petitions that would support the elements of a constructive trust.

As explained above, state law—or the law of the jurisdiction that created the property interest being asserted—determines what interest the claimant has in the forfeited property. *Watts*, 786 F.3d at 161. As such, the Court must determine whether the Check Payee Petitioners and October Petitioners can establish their right to a constructive trust under state law. Here, both the Government and the Petitioners agree that New York law applies. (Opp. Br. at 5; Reply at 12–17); *United States v. Lacoff*, 446 F. App'x 311, 312 (2d Cir. 2011) (assessing state law whose application parties did not dispute). Under New York law, a constructive trust may be imposed where four factors are present: (i) a promise, express or implied; (ii) a transfer in reliance on the promise; (iii) a fiduciary or confidential relationship; and (iv) unjust enrichment. *United States v. Lesak*, No. 07-0396, 2009 WL 1788411, at *5 (S.D.N.Y. June 23, 2009) (citing *Simonds v. Simonds*, 45 N.Y.2d 233, 242 (1978)). Although these factors provide "important guideposts, the constructive trust doctrine is equitable in nature and should not be rigidly limited." *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 362 (2d Cir. 1999) (quotation omitted). Further, in a forfeiture context, "[i]t is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer." *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir.1985); *Fed. Ins. Co.*, 882 F.3d at 373 ("[A] constructive trust attaches only to the specific property appropriated from a claimant by the offender or that can be traceable thereto."). In fact, "[t]racing is necessary where a private plaintiff

19

seeks to impose a constructive trust, because liability is premised on the fiction that the victim at all times retained title to the property in question, which the defendant merely holds in trust for him." *F.T.C. v. Bronson Partners, LLC*, 654 F.3d 359, 373 (2d Cir. 2011).

The Court finds that the Check Payee Petitioners and October Petitioners have failed to allege any facts in their Petitions that would support the elements of a constructive trust. First, none of the Petitions at issue allege that a promise was made by the Defendant to hold or transmit money on behalf of any of the Petitioners. (*See, e.g.,* Cheung Petition; Lin & Chen Petition; Jiang Petition; Guang Petition; Chen Petition; Xu Yu Jiang Petition; N. N. Wang Petition; Lin Petition; M. Chen Petition). Second, none of the Petitioners allege that they transferred money to the Defendant in reliance on any promise. (*Id.*). Rather, the Petitioners merely allege an interest in funds based on their status as holders of checks drawn on particular bank accounts. (*Id.*). But they do not plead when they transferred any assets to the Defendant, why they transferred assets to the Defendant, or the amount of assets they transferred to the Defendant that were then held in the Defendant's accounts.[6] Third, none of the Petitioners allege that they were in a confidential or fiduciary relationship with the Defendant. (*Id.*). In fact, as the Government points out (Reply at 13), New York courts have held that purely commercial transactions do not give rise to a fiduciary relationship. *See, e.g., Rodgers v. Roulette Records, Inc.*, 677 F. Supp. 731, 738–39 (S.D.N.Y. 1988). Moreover, "[i]t is a firmly established principle that if a recipient of funds is not prohibited from using them as his own and commingling them with his own monies, a debtor-creditor, not a trust, relationship exists." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 353 (2d Cir.

---

[6] To be sure, in their Opposition Brief the Petitioners provide that they transmitted money to the Defendant to hold for them because they "trusted the advice" of the Defendant. (Opp. Br. at 1). However, they do not explain what promise was made by the Defendant, when any of the Petitioners transferred assets to the Defendant based on that promise, and in what amount. And regardless, no such allegations appear in their Petitions. *Strube*, 58 F. Supp. 2d at 585 (rejecting petitioners' theory of a constructive trust because it was not asserted in the 30-day window set forth in § 853(n)(2)).

1992).  Here, there is nothing in the Petitions to suggest that the right to payment the Petitioners

seek based on the identified checks amounts to anything other than an informal debt obligation.

And none of the Petitioners allege that the Defendant, as the alleged recipient of their funds, was

prohibited from using those funds as his own and commingling them with his own money.  More

specifically, as the Government points out (Reply at 14), neither the Check Payee Petitioners nor

the October Petitioners have alleged that Defendant held funds transferred to him by Petitioners

separately from other funds Defendant accepted from other individuals or Defendant's own funds.

(*See, e.g.,* Cheung Petition; Lin & Chen Petition; Jiang Petition; Guang Petition; Chen Petition;

Xu Yu Jiang Petition; N. N. Wang Petition; Lin Petition; M. Chen Petition).  As such, the only

relationship between the Petitioners and the Defendant that can be inferred from the Petitions is a

debtor-creditor relationship rather than a fiduciary relationship.  Fourth, none of the Petitions

allege that unjust enrichment would result if the Court declined to impose a constructive trust.

(*Id.*).  While the abovementioned factors are merely "guidelines and their rigid application is not

required," here there are no facts in any of the Petitions to warrant the imposition of a constructive

trust.  *Matter of Est. of Knappen*, 237 A.D.2d 677, 679 (1997).

Finally, and significantly, the petitions have failed to trace any assets transferred by them

to the Defendant to the specific assets subject to the order of forfeiture.  More specifically, the

Petitions fail to plead whether any of the funds the Check Payee Petitioners and October Petitioners

transferred to the Defendant, and which form the alleged constructive trust, were ever held in—or

transferred to—the bank accounts which are the subject of the Court's forfeiture order and in which

they claim an interest based on their status as holders of checks drawn on those accounts.[7]  In other

---

[7]      Further, even if the Petitioners could somehow trace their assets to the forfeited property, the practical effect
of recognizing a constructive trust would be to prioritize the Petitioners' interests over other similarly situated
claimants who may have entrusted Defendant to transmit funds into their accounts on their behalf.  In fact, "[c]ourts
have recognized, that even when a victim of fraud can trace their investments in the criminal proceeds, it would be

words, as the Government points out (Reply at 14), because neither the Check Payee Petitioners nor the October Petitioners have alleged that Defendant held funds transferred to him by the Petitioners separately from other funds Defendant accepted from other individuals or Defendant's own funds, the Petitioners have failed to plausibly show that any of the money seized by the Government is actually theirs.  As such, the Check Payee Petitioners and the October Petitioners have failed to trace any assets, contributed by them and held in the alleged constructive trust, to the property subject to the forfeiture order.  *United States v. BNP Paribas S.A.*, No. 14-0460, 2015 WL 1962882, at *4 (S.D.N.Y. Apr. 30, 2015) (declining to apply constructive trust where petitioner failed to trace any property interest to the subject funds forfeited).  The Court finds that the Check Payee Petitioners and October Petitioners have failed to allege any facts in their Petitions that would support the elements of constructive trust.  Because New York law does not support the imposition of a constructive trust, the Petitioners are merely general creditors without a "legal interest" in the forfeited property under 21 U.S.C. § 853(n)(2), and with no identifiable "right, title, or interest" under § 853(n)(6).[8]

The Petitioners' cited case law does not lead this Court to reach a contrary conclusion. (Opp. Br. at 8).  To start, the Petitioners cite to *United States v. Vilar*, No. 05-0621, 2021 WL 4504699, at *4 (S.D.N.Y. 2021), to support their theory of constructive trust.  However, as the

---

inequitable to prioritize their claims over those of other creditors." *United States v. Sharma*, No. 18-0340, 2023 WL 1365138, at *4 (S.D.N.Y. Jan. 31, 2023); *United States v. Andrews*, 530 F.3d 1232, 1237–39 (10th Cir. 2008) ("[A] court should not employ an equitable fiction to elevate one claim over the claims of other creditors if those creditors are similarly situated." (internal quotation marks and alteration omitted)).

[8]        As explained above, while state law determines whether a petitioner is entitled to a constructive trust, federal law determines whether that interest is a "legal interest" under § 853(n).  *Fed. Ins. Co.*, 882 F.3d at 371; *Ramunno*, 599 F.3d at 1273–74.  A constructive trust is an equitable remedy.  *Willis Mgmt.*, 652 F.3d at 242.  While the Third Circuit has suggested that claims which are equitable in nature may be asserted under § 853(n)(6), it has not explicitly held that a constructive trust may be raised under § 853(n)(6) to defeat the Government's forfeiture claim.  *Lavin*, 942 F.2d at 185 n. 10 (rejecting legal/equitable distinction, but not addressing issue of constructive trust).  And at least one court in the Third Circuit has stated that a constructive trust cannot properly be asserted under § 853(n)(6).  *Strube*, 58 F. Supp. 2d at 586.  Nevertheless, because the Court finds that the Petitioners are not entitled to a constructive trust under state law, it need not reach this issue.

Government points out (Reply at 16), in *Vilar* the parties did not dispute a number of the required elements that support the imposition of a constructive trust. Rather, the parties only disputed whether the petitioners could establish traceability and whether the petitioners had another legal remedy they could pursue other than a constructive trust to obtain relief. *Vilar*, 2021 WL 4504699, at \*4. In contrast, here, as explained above, the Petitioners have not alleged any facts to support imposition of a constructive trust. Likewise, though the Petitioners cite to the court's decision in *United States v. Ovid*, No. 09-0216, 2012 WL 2087084, at \*5 (E.D.N.Y. June 8, 2012), there too the government did not dispute that the petitioner had satisfied the elements required for a constructive trust, and only argued that the imposition of a constructive trust would be unwarranted because the petitioner had another adequate legal remedy and the imposition of a constructive trust would be unfair to other victims of the defendants' fraud. Here, the Government disputes that the Check Payee Petitioners and October Petitioners have satisfied any of the elements required for a constructive trust. As such, *Vilar* and *Ovid* are inapposite. *United States v. Lacoff*, 446 Fed App'x 311, 313 (2d Cir. 2011), is likewise distinguishable. To start, *Lacoff* involved a civil forfeiture action applying Connecticut, rather than New York, constructive trust law. Further, in *Lacoff*, the Second Circuit affirmed the award of a forfeited parcel of property to various insurance companies found to be innocent owners entitled to imposition of a constructive trust based on a convicted fraudster's purchase of the property with criminal proceeds taken from the insurance companies. *Lacoff*, 446 Fed App'x at 312. However, in *Lacoff*, the court was able to trace the investor companies' funds specifically to the only account at issue in the case, which were then used to purchase the property. *Id.* at 315. No such analogy can be drawn to this case. As discussed above, the Petitions fail to plead whether any of the funds the Check Payee Petitioners and October Petitioners transferred to the Defendant, and which form the alleged constructive trust, were ever

held in—or transferred to—the bank accounts which are the subject of the Court's forfeiture order and in which they claim an interest based on their status as holders of checks drawn on those accounts.  Accordingly, their reliance on *Lacoff* is unavailing.  Next, the Petitioners cite to *United States v $822,694.81 in United States Currency, Seized From Account No. XXXXXXXXXXX, Held in Names of Godwin Ezeemo and Winifred C.N. Ezeemo, at Bank of Am.*, No. 13-0545, 2015 WL 13765353, at *1 (D. Conn. July 24, 2015).  Like *Lacoff*, this case too involved a civil forfeiture action applying Connecticut, rather than New York, constructive trust law.  In *$822,694.81*, a law firm deposited a supposed client's fraudulent check into its trust account and wired the remaining funds, at the direction of the fraudster, to an account that was thereafter frozen and seized for forfeiture.  *$822,694.81*, 2015 WL 13765353 at *1.  In *$822,694.81*, however, the government did not dispute that the law firm could trace the particular funds it wired to the Bank of America account.  *Id.* at *3.  As explained above, such is not the case here.  Finally, the Petitioners cite to *United States v. $2,350,000.00 In Lieu of One Parcel of Prop. Located at 895 Lake Ave. Greenwich, Connecticut*, 718 F. Supp. 2d 215 (D. Conn. 2010).  This case also involved a civil forfeiture action applying Connecticut, rather than New York, constructive trust law.  In *$2,350,000.00*, the Defendant pled guilty to a money-laundering scheme.  While engaged in fraud and money-laundering Defendant purchased a residential home.  *$2,350,000.00*, 718 F. Supp. at 217.  The court found that insurance companies, that were looted by the defendant, could claim an interest in the residential property pursuant to a theory of constructive trust because they had established that the money they had deposited into a bank account was used to purchase the residential property.  *Id.* at 228.  Again, as discussed above, the Check Payee Petitioners and October Petitioners fail to plead whether any of the funds they transferred to the Defendant, were ever held in—or transferred to—the bank accounts which are the subject of the Court's forfeiture

order and in which they claim an interest based on their status as holders of checks drawn on those accounts.  Accordingly, *$2,350,000.00* is inapposite.[9]

### C.      Leave to Amend is Inappropriate

Finally, though the Petitioners seek leave to amend their Petitions to cure any defect (Opp. Br. at 11), the Court finds that the Petitions must be dismissed *with prejudice* because leave to amend would be inappropriate.  Unlike an ordinary civil proceeding in which amendments to pleadings are generally freely given, Fed. R. Civ. P. 15(a)(2), the timing requirements for filing third party petitions under § 853(n)(2) are strictly construed.[10]  Courts have routinely held that the

---

[9]      As stated above, the Court finds that the Check Payee Petitioners and October Petitioners cannot properly bring petitions for an ancillary proceeding because even accepting the facts set forth in their Petitions as true, New York law does not support the imposition of a constructive trust, and as such the Petitioners are merely general creditors without a "legal interest" in the forfeited property under 21 U.S.C. § 853(n)(2) and with no identifiable "right, title, or interest" under § 853(n)(6).  Nevertheless, it appears to the Court that there is an additional reason why the Petitioners cannot proceed under § 853(n)(6)(A).  Under § 853(n)(6)(A), the court can amend the forfeiture order if the third party shows that she has an interest in the forfeited property that was vested or superior at the time of the crime.  21 U.S.C. § 853(n)(6)(A).  Subsection 853(n)(6)(A) works together with the "relation-back" doctrine embodied in § 853(c), which provides that all property subject to forfeiture based on a criminal offense "vests in the United States upon the commission of the [offense]."  *See* 21 U.S.C. § 853(c); *United States v. Hallinan*, 75 F.4th 148, 152 (3d Cir. 2023).  For this reason, courts have recognized that a petitioner is unlikely to prevail at an ancillary hearing under § 853(n)(6)(A) where the forfeited property consists of "proceeds" derived from or traceable to a criminal offense because, by definition, the "proceeds of an offense do not exist before the offense is committed," and, because "the government's interest under the relation-back doctrine immediately vests" upon the commission of that offense, any proceeds that ensue from the criminal act belong to the government from the moment that they come into existence.  *United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007); *see also United States v. Watkins*, 320 F.3d 1279, 1282 (11th Cir. 2003); *see also United States v. Catala*, 870 F.3d 6, 10 (1st Cir. 2017)  (since proceeds from a crime do not precede the commission of the crime, the government's interest in proceeds forfeited pursuant to § 853(a)(1) will almost always pre-date that of a third party who is a general creditor).

Here, Defendant pleaded guilty to operating an unlicensed money transmitting business that operated from in or around 2016 through in or around 2021.  (*See* D.E. No. 80 at 1).  Based on the allegations in the Petitions, it is not clear to the Court that the Petitioners had a legal interest in any of the forfeited property before the underlying crime was committed beginning in 2016.  In fact, all of the checks on which the Petitioners are named as payees are dated in 2021 and the Petitioners assert that their interest was acquired as of the date the checks were drafted in 2021.  (*See, e.g.,* Cheung Petition; Lin & Chen Petition; Jiang Petition; Guang Petition; Chen Petition; Xu Yu Jiang Petition; N. N. Wang Petition; Lin Petition; M. Chen Petition).  And while some courts have held that a constructive trust can operate to create a superior legal interest under § 853(n)(6)(A), as explained above, the Petitioners have not pled any facts in their petitions to support the imposition of a constructive trust.  *Willis Mgmt.*, 652 F.3d at 245.  Accordingly, it appears that in addition to the reasons stated above, the Petitioners cannot establish that they had an interest in the forfeited property that was vested or superior at the time of the crime under § 853(n)(6)(A).  *Catala*, 870 F.3d at 10 (affirming dismissal of third-party petition where petitioner could not show that his interest in the forfeited cash existed before the defendant engaged in the criminal offense).

[10]      21 U.S.C. section 853(n)(2) provides: "Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the

deadline for filing petitions in section 853(n)(2) is mandatory. *See, e.g.*, *United States v. Sharma*, 509 Fed. App'x. 381, 382 (5th Cir. 2013) (stating that "[a] third party who files an untimely petition loses his right to assert any interest in the property"); *United States v. Marion*, 562 F.3d 1330, 1337 (11th Cir. 2009) (holding that if a third party fails to file a petition within the prescribed thirty days, her interest in the property is "extinguished"). Because any amended claim would be untimely, the Court dismisses all of the Petitions *with prejudice*. *United States v. Lamid*, 663 F. App'x 319, 325 (5th Cir. 2016) (affirming trial court's denial of leave to amend a § 853(n) petition); *Strube*, 58 F. Supp. 2d at 585 (rejecting petitioners' theory of a constructive trust because it was not asserted in the 30-day window set forth in § 853(n)(2)).[11]

## IV.   CONCLUSION

Based on the foregoing, the Government's motion (D.E. No. 104) is **GRANTED**, and the third-party Petitions are dismissed *with prejudice*. An appropriate Order follows.

Dated: January 18, 2024

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury." 21 U.S.C. § 853(n)(2).

[11]   As described above, on September 13, 2022, Petitioner Yongning Wang filed a petition for an ancillary hearing, asserting an interest in the disposition of funds represented by forty-six checks based on a theory of common law subrogation. (*See* Wang Petition). Thereafter, on October 18, 2022, seven additional Petitioners filed Petitions for an ancillary hearing, asserting an interest in the disposition of funds represented by checks, all of which overlap with the checks in the Wang Petition. In their Opposition Brief, Petitioners request that to the extent the October Petitions are based on the same underlying checks as portions of the Wang Petition, those portions of Wang's Petition be deemed superseded by the October Petitions. (Opp. Br. at 1 n.1). They clarify that they do not oppose dismissing any portions of Wang's Petition that have not been superseded. (*Id.*). As such, the Court does not consider the Government's other arguments in favor of dismissing the Wang Petition. (Mov. Br. at 29–32). And regardless, to the extent that Petitioners still seek to assert that Wang has an interest in any of the checks in his Petition based on a theory of common law subrogation, the Petitioners set forth no argument in their Opposition Brief to oppose the Government's arguments that Wang cannot satisfy the elements of common law subrogation. (*See generally* Opp. Br.). As such, the Court finds any such argument and theory by the Petitioners waived and accordingly dismisses the Wang Petition *with prejudice*. *Market*, 828 F. Supp. 2d at 773. Further, because the Court finds, for the reasons stated above, that the October Petitioners are merely general creditors without a "legal interest" in the forfeited property under 21 U.S.C. § 853(n)(2) and with no identifiable "right, title, or interest" under § 853(n)(6), it does not consider the Government's additional arguments in favor of dismissing the petitions of the October Petitioners. (Mov. Br. at 32–34; Reply at 17–18).